## Johnston *et al. versus* Cowan.

1. Cowan by writing granted to Johnston and others as partners, the privilege to take clay from his land for twenty years at 12 cents per ton; to pay $150 at the end of every six months, although they should not then have taken away so much clay as would amount to that sum. *Held,* that the writing was an instrument for the payment of money within the Affidavit of Defence Law.

2. The plaintiff by a special count set out that the defendants agreed in writing to pay him "$150 on the 1st of October 1866, $150 on the 1st of April 1867, $150 on the 1st of October 1867, and $150 on said days semi-annually thereafter, a copy of which agreement is hereto attached," &c. *Held,* to be sufficiently specific for the court to order a liquidation by the prothonotary.

3. Filing the agreement was of itself a copy of the claim, and no more could be recovered than was due on it.

4. The writing was an agreement to pay for the privilege of taking clay whether exercised or not.

5. The sums to be paid if the *minimum* of clay was not taken out were liquidated damages, being a payment for a privilege and the contract not being a mere license.

6. The agreement was signed by the grantor, and the firm name was signed "per J. R.," one of them. *Held,* that if the grant of an interest in land it was a sufficient signing within the Statute of Frauds: the owner having signed and that bound him.

7. The owner who conveys must be bound by writing, but the other party for anything contained in the statute need not so be bound.

October 29th 1868. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Westmoreland county:* No. 47, to October and November Term 1868.

This was an action of assumpsit, commenced on the 14th of November 1867, in which Edgar Cowan was plaintiff, and Thomas Johnston, James M. Taylor, John C. Taylor and Isaac Reese, partners trading as Johnston, Taylor & Co., were defendants.

The plaintiff declared on the common counts for an indebtedness

[Johnston *v.* Cowan.]

of $1000, and also in a special count setting out that " on the 9th day of September, A. D. 1865, the defendants entered into an agreement in writing with said plaintiff, obligating themselves to pay unto said plaintiff one hundred and fifty dollars on the 1st day of October A. D. 1866, and one hundred and fifty dollars on the 1st day of April, A. D. 1867, and one hundred and fifty dollars on the 1st day of October 1867, and one hundred and fifty dollars on said days, semi-annually thereafter (a copy of which agreement is hereto attached), and then and there delivered the said agreement to the said plaintiff, and promised to pay the plaintiff the same, according to the tenor and effect thereof. But the defendants did not pay the same," &c.

The agreement was "between Edgar Cowan * * of the first part, and Thomas Johnston, James M. Taylor, John C. Taylor and Isaac Reese, partners trading as Johnston, Taylor & Co., of the second part." By it Cowan granted "unto the said parties of the second part, the right and privilege to dig, mine, take and carry away fire-clay, such as is used in the manufacture of fire-brick, for the term of twenty years, from and after the 1st day of April next, 1866, of and from all that certain tract, &c. * * In consideration whereof the said parties of the second part covenant and agree to and with the said Cowan, that they shall well and truly pay * * 12 cents for each ton of said clay taken and carried away from said tract by them, during the term aforesaid. That they will keep a just and true account of the number of tons mined and taken away; and on the 1st day of October 1866, and on the 1st day of April and October in each year thereafter, during the said term, shall render the same to said Cowan, and pay for the same at the rate aforesaid, if the number of tons exceeds 1250, and if less than that amount, then they are to pay on each of the days above mentioned, $150. It being distinctly understood, covenanted and agreed to by the parties of the second part, that they will pay $150 every six months, during the term aforesaid, although they may not have mined and taken away an amount of clay equivalent, previous to the time the said sum falls due; but if they take more they are to pay for the same as above. And if in any one period of six months they shall not take 1250 tons, then after paying for the amount, they may make up for the deficit in the next succeeding period of six months, and not afterwards. * *

"It is further agreed that in case the parties of the second part shall fail to pay the semi-annual payments when the same become due, then, at the option of the said Cowan, he may re-enter and repossess the premises at any time after ten days from such failure; and his re-entry and repossession of the premises shall not affect his right to other remedies at law for the recovery of any moneys due on this agreement. Said Cowan also agrees

[Johnston *v.* Cowan.]
that the parties of the second part may enter immediately and take clay, to be accounted for and paid 1st October 1866.

"Witness our hands.          EDGAR COWAN,
                        JOHNSTON, TAYLOR & CO.,
          Per ISAAC REESE."

An affidavit of defence was made by James M. Taylor, one of the defendants, as follows :—

1. The defendants are not in any way indebted to the plaintiff, unless under and by virtue of the copy of the supposed agreement filed.

2. The contract or agreement was only the grant of a privilege to mine the clay, and the defendants did not bind themselves to take any clay; and never took any clay—never entered on the land, nor made any erections thereon, in pursuance of said agreement, and not having enjoyed any benefit or advantage under it, they are not bound to pay the plaintiff any sum of money whatever.

3. The stipulation for the payment of $150 semi-annually, has reference to the probable event that the defendants would mine and take away some clay, but less than 1250 tons semi-annually. But this stipulation had no reference and does not apply to the event which has happened that no clay whatever was taken.

4. The $150 semi-annual payment was in the nature of a penalty, and equity will restrain the collection of this sum, or any sum under it, beyond the actual damage, if any.

5. Under the Statute of Frauds, and also under the law applicable to partners, upon the face of the pleadings Reese only can be held, not the firm.

6. The lease or license is void under the Statute of Frauds and Perjuries, the supposed lessees never having entered, and the supposed lease not being signed by the parties to be charged therewith, even Reese does not sign it for himself within the meaning of the statute, because he sets forth that the firm had signed through or by him, and he had no written authority to place the names of the partners or firm to the agreement.

The court below delivered the following opinion :—

" I do not think this contract is a lease or interest in land, but a lease to enter for a special purpose, and not under the Statute of Frauds.   Being a mere privilege for partnership purposes, one partner may bind his copartners by an instrument not under seal.

" The objection that the defendants have not availed themselves of their privilege, comes with a bad grace from them, as they tied up the plaintiff's hands from making any other contract.

" I look upon the amount in the agreement as a contract for a specific sum for an annual privilege, and, as there is no allegation

of fraud, and nothing but the neglect of the defendants themselves, and no hindrance by plaintiff, is therefore binding.

"Judgment therefore for plaintiff for the amount claimed for want of a sufficient affidavit, &c."

The damages were liquidated at $474.

The defendants took a writ of error, and assigned for error the entering judgment for plaintiff for want of a sufficient affidavit of defence, and for the amount claimed by the plaintiff.

*H. P. Laird,* for plaintiffs in error.—The judgment was for "the amount claimed," which may be the sums claimed in the common counts, and all the sums mentioned in the special count. Judgment for the "amount claimed" is erroneous. There is no cause of action on the special count; there is no consideration set out. Where some counts are defective, and the judgment is general, it is error: Stuart *v.* Blum, 4 Casey 225. The agreement is not such an instrument for the payment of money as would authorize a judgment for want of an affidavit of defence: Dewart *v.* Mosser, 4 Wright 302. The grant is an incorporeal hereditament: Muskett *v.* Hill, 5 Bing. N. C. 694; Yeakle *v.* Jacobs, 9 Casey 376: and within the Statute of Frauds; at most it would bind Reese alone; but even he would not be bound, for he does not sign for himself. Equity would treat the sum mentioned as a penalty, and limit the recovery to the actual damage: 2 Story's Eq. J. 1318; Burr *v.* Todd, 4 Wright 206; Addison on Contracts 1161–1163; Sedgwick on Meas. of Dam. 398, 399, 406, 408, 411, 412, 419, 421, 423.

*H. D. Foster,* for defendant in error.—If there could be any injury by entering judgment generally, it is cured by the liquidation, which will protect the defendant against another action: Stuart *v.* Blum, *supra.* A sum by the agreement was to be paid every six months; it is therefore an instrument for the payment of money: Act of 14th April 1846. The contract is not within the Statute of Frauds: McKellip *v.* McIlhenny, 4 Watts 317. It is signed by the party to be charged, which is sufficient: Lowry *v.* Mehaffy, 10 Watts 387. The sum is liquidated damages: Crisdee *v.* Bolton, 3 Carr. & P. 240; Streeper *v.* Williams, 12 Wright 450.

The opinion of the court was delivered, November 16th 1868, by

Thompson, C. J.—It is important to settle, first, whether the article of agreement declared on, is an instrument of writing for the payment of money within the rule of court and Act of Assembly; if not, the other questions would, so far as this case is concerned, be immaterial. But we are very clear that it is such instrument in the covenant declared on. The article is an agree-

ment for the privilege of digging, mining and taking away clay for the manufacture of fire-brick, from the land of the plaintiff, and for every ton exceeding 1250, and including that number, the defendants agree to pay semi-annually, 12 cents per ton. But, if less than that amount were taken, the privilege was to be paid for in a gross sum semi-annually, to wit, $150 for every period of six months.

The *narr.* claims to recover on this clause of the agreement. It is a fixed and certain sum; not contingent or conditional, and if the agreement be good for anything, it is extinguishable only in money. In Trent *v.* McGuire, 6 Watts 77, a lease reserving rent was held to be an instrument in writing for the payment of money under the Act of 28th March 1855, relating to the District Court of Philadelphia, substantially in its provisions, similar to the rules of court in this case. Such also was the decision in Dewey *v.* Dupuy, 2 W. & S. 553. The instrument before us is equally well entitled to be regarded as an instrument for the payment of money as was either of these cases, and we so hold it to be.

The defendants filed an affidavit of defence to the plaintiff's claim; what defence was set forth we do not certainly know, as it is not in the paper-books, but presuming it to have contained or raised the matters insisted on in argument, we will briefly notice them.

We think the special count was specific enough to enable the court to order a liquidation by the prothonotary. Besides, the article of agreement was filed as a copy of the claim, and no more could be recovered than was due on it. This was shown both by the covenant and copy of claim.

It was further insisted that the contract was but a license, and if no clay were taken, no money was to be paid. We do not agree that this is the true interpretation of the instrument, or that that was what the parties meant by it.

The covenant to pay for the privilege granted, and on which the action and count were founded, is as follows. After stipulating for payment by the ton, when it exceeded 1250 tons taken, semi-annually, it provides, " and if less than that amount, then they (the grantees) are to pay on each of the days above mentioned $150; it being distinctly understood and covenanted and agreed by the parties of the second part (Johnston, Taylor & Co.) that they will pay $150 every six months during the term aforesaid, although they may not have mined and taken away an amount of clay equivalent, previous to the time the said sum falls due; but if they take more they are to pay for the same."

It then appears that the parties to the contract endeavored to be explicit, and to express clearly their understanding by this clause, and we think they fully succeeded in expressing without ambiguity, that the defendants were to pay for the privilege of

[Johnston *v.* Cowan.]

mining and taking away clay whether they should choose to exercise it or not.    It is not very material to refer the rights acquired under the contract to any specific class of interests in, or arising out of, real estate, for the intention to grant a privilege and to pay for it in a specified way, and at definite periods, is clearly expressed, and the soundest rule in the world is, that which carries into execution the intention of the parties.    It is highly improper to call the fixed sums to be paid in the event of the *minimum* of clay not being taken, liquidated damages.    It is an alternative price to be paid in an event which it was foreseen might happen, not as damages, but in payment for the privilege.    However this may be, it is certain it is nothing like a penalty.    We hold that the contract was not a mere license, but the grant of a right or privilege, which the parties were bound to pay for, whether they enjoyed it or not.    This was their contract, and they must abide it.

We are of opinion, also, that even if, as the defendants claimed, this was a grant of a corporeal interest, a hereditament, there was a sufficient signing to take the contract out of the Statute of Frauds and Perjuries.    Cowan, the grantor, owner of the land, signed, and that bound him; and this was sufficient: Lowry *v.* Mehaffey, 10 Watts 387.    The covenantees could enforce the contract against him, for he was bound as the statute requires, by writing.    The intention of the framers of the statute was to prevent titles from being divested by parol.    Hence he who has a title to convey, must be bound by writing, but the opposite party need not be, on account of anything contained in the statute, for he is not parting with title, and he may recover a conveyance without a written assent.    But in this case we hold, as clearly indicated, that the contract before us was not a sale of a corporeal interest, but a mere privilege.    This is sustained by Grove *v.* Hedges, 5 P. F. Smith 504.    We see no reason, therefore, why one member of the firm could not bind the firm by signing the firm name in the course of its business.    Nothing appears to show us that the contract was beyond its scope.    Without enlarging, we think that the court below committed no error in entering the judgment complained of.

Judgment affirmed.