J. T. EVERHART ET AL. v. FRANK DOLPH ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS OF LACKAWANNA COUNTY.

Argued February 25, 1890—Decided March 31, 1890.
[To be reported.]

1. When the description in a deed gives no courses and distances and calls for no monuments or marks on the ground, but consists simply of the northern, western and southern adjoiners and a statement of the quantity of land conveyed, it may be that as a general rule the location of the eastern boundary is to be ascertained from the statement of the quantity contained.

2. But, if the manner in which the quantity is stated shows that it is merely an estimate, and the land is described, further, as being the northern part of a patented tract, the whole of which is adjoined on

Statement of Facts.

the north by the tract mentioned by the deed as the northern adjoiner, the description is capable of construction as intended to extend to the eastern line of the original tract.

3. Such a description being equivocal and to some extent ambiguous, after the introduction of facts developing the ambiguity, parol evidence is admissible to identify the subject matter; and the original contract of sale in execution of which the deed was made may be received in evidence, notwithstanding it is merged in the deed, in order to explain the ambiguity and ascertain the boundary intended.

4. But a paper, purporting to be such a contract, signed by the vendees alone and not by the vendors, is inadmissible for that purpose when offered by the vendees, though produced from the custody of a real-estate agent of the vendors, holding it with other papers for them, there being no evidence that the deed was made in pursuance of it: Flannery v. Dechert, 13 Pa. 505, distinguished.

5. Whether a tract of land is taxable as seated or unseated land, depends upon its appearance to the assessor at the time of the assessment; if it is then cultivated or improved, he should place it upon the seated list, without reference to the state of the taxable's title; but a subsequent occupation, within the year, of land returned as unseated, will not affect the validity of a sale of it for taxes as unseated land.

6. If the owner of a tract of 276 acres unseated land, returned and taxed as such as a whole, pays the taxes upon 210 acres thereof only, the same not being designated as any specific part of the 276 acres, and allows the remaining 66 acres to be sold for taxes so assessed, the purchaser of the tax title has the right to locate his purchase upon such part of the whole as he may choose.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and McCOLLUM, JJ.

No. 130 July Term 1889, Sup. Ct.; court below, No. 365 October Term 1886, C. P.

On July 29, 1886, John T. Everhart and Edward Dolph brought ejectment against Frank Dolph and Frank Irving for 120 acres and 146 perches of land in Spring Brook township, Lackawanna county, formerly a part of Luzerne county. The defendants disclaimed title to a part of the land described in the writ, the location of which is shown by the plot on page 631 post, and as to the residue of the land sued for they pleaded not guilty.

At the trial on October 9, 1888, the plaintiffs, after putting in evidence the writ of ejectment and the sheriff's return thereto, to show possession by the defendants, presented testimony tending to establish the following facts:

Statement of Facts.

On September 6, 1796, Joseph Thomas obtained a patent for a tract of 400 acres and the usual allowance, originally surveyed on May 7, 1793, under a warrant bearing date October 16, 1792, in favor of Benjamin Heacock. That tract, of which the premises embraced in this suit were a part, was bounded on the north by lands of Thomas Starr, on the east by lands of Isaac Bennett and on the west by lands of Daniel Heacock. In 1806, the title to it became vested in Dr. David Hosack, who died prior to 1844. Either he in his lifetime, or his heirs after his death, divided up this and other lands into smaller tracts designated by numbers, the Benjamin Heacock land being divided into four parcels, each containing about 100 acres, numbered respectively 13, 14, 19 and 20. In 1844, the heirs conveyed to Abraham Turner 100 acres, with the allowance of six per cent, comprising portions of lots 19 and 20. In 1854 they conveyed to Thomas Thomas 40 acres out of the southern half of lot 13, and in 1859 they sold to Thomas the southern half of lot 14. The eastern half of lot 20 was sold by them to David Griffiths on August 16, 1856. The subdivisions of the Benjamin Heacock tract and the locations of the parcels sold by the Hosack heirs, as above stated, as well as the location of the land embraced in this action are shown by the plan given.

On November 21, 1868, the Hosack heirs conveyed to the plaintiffs, for the expressed consideration of $7,000, various parcels of land in Spring Brook township. In the specification of the properties embraced in that deed, the fourth item was described as follows :

" Two separate parts of a large lot of land containing 400 acres and allowance more or less ; surveyed on a warrant to Benjamin Heacock, and bounded on the north by the lot surveyed on a warrant to Thomas Starr, on the west by the lot surveyed on a warrant to Daniel Heacock, and on the south by the lot surveyed to Thomas Bennett; the northern part thereof, hereby conveyed, being bounded on the north by the lot aforesaid surveyed to Thomas Starr, on the west by the lot aforesaid surveyed to Daniel Heacock, on the south by land heretofore sold to others by the first party, containing about 70 acres more or less. The southern part thereof, hereby conveyed, on the west by the lot aforesaid surveyed to Daniel Heacock, north and east by lands heretofore sold to others by

Statement of Facts.

the first party, on the south by a lot sold to Thomas Bennett, containing about 54 acres, more or less."

The second parcel of item 4 was admittedly the western half of lot 19 in the original subdivision of the Benjamin Heacock tract. For the purpose of showing that the other parcel, de-

THOMAS STARR.

| DANIEL HEACOCK. | | | ISAAC BENNETT. |
|---|---|---|---|
| The land embraced in defendants' disclaimer. No. | | The land in controversy, about 66 acres. No. | |
| 50 acres sold to Thomas Thomas, in 1859. 14. | | 40 acres conveyed to Thomas Thomas, in 1854. 13. | |
| No. 19. | | No. 20. | |
| 54 acres conveyed to the plaintiffs. Not in dispute. | 100 acres and allowance, conveyed to Abraham Turner in 1844. | | 52 a. 43 p. Sold to David Griffiths, August 16, 1856. |

scribed as containing 70 acres, was intended to embrace all of the Benjamin Heacock tract lying north of the two parcels sold to Thomas, the plaintiffs offered in evidence, a paper dated October 27, 1863, and purporting to be a contract between the Hosack heirs and the plaintiffs, for the sale by the former to the latter of "all of their lots of land in Spring Brook township, containing about 4,000 acres, more or less, being all of the tracts of land surveyed in the warrantee names of Timothy Bronson and Thomas Starr, Sarah Richards, H. Shaw and Mary Richards. Also, all of the parts of tracts not heretofore

sold or contracted to be sold by the first party, and surveyed in the warrantee names of N. Starr, Daniel Heacock, Charles Bennett, I. Bennett, Benjamin Benedict, Andrew Bennett, Sarah Singer, and others, for the consideration of $7,000, conveyance to be made as follows:" . . . . .

This paper was signed by the plaintiffs but was not signed by or for the Hosack heirs. The offer of the plaintiffs proposed to follow the paper with testimony showing that it was obtained from the Hosacks.

Objected to, because the contract is not signed by the vendors, and even if it were, it is merged in the deed subsequently made, from which it differs in description.

By the court: Offer admitted, exception.[1]

The plaintiffs then called Mr. Steuben Jenkins, who testified that he procured the contract dated October 27, 1863, from E. T. Emmett, of New York, who was the real-estate agent of the heirs of Dr. Hosack, and was holding it for them together with other papers and deeds. The plaintiffs then rested:

The defendants presented testimony tending to show that in the years 1856 and 1857, 276 acres of the Benjamin Heacock tract were returned by the tax assessor as unseated land; that taxes for those years were paid on behalf of the Hosack heirs upon 210 acres thereof, although in 1855 and prior years they had paid taxes upon 276 acres; that on June 14, 1858, 66 acres thereof were sold as unseated land to the county commissioners, for the unpaid taxes of 1856 and 1857, and on October 27, 1863, the commissioners sold the same to Jacob M. Smithers, and subsequently delivered to him a deed therefor; that in 1868 the same 66 acres were again sold to the commissioners for unpaid taxes of 1865 and 1866, and on October 22, 1873, the commissioners sold the same to Elizabeth Smithers, widow of Jacob Smithers, who was then deceased, and in pursuance of this sale conveyed title to her on May 20, 1874; that Elizabeth Smithers died in 1878; that on March 4, 1884, the children and heirs of Jacob and Elizabeth Smithers, by quit-claim deed, conveyed said 66 acres to the defendant Irving, who afterwards conveyed the undivided half thereof to the defendant Dolph; that the defendants then went upon the ground and took possession of the 66 acres at the northeast corner of the Benjamin Heacock tract, embracing all that part of lot 13 lying north of the Thomas purchase of 40 acres.

Charge of Court below.

Several witnesses for the defendants testified that, for many years before, that particular piece of ground had been known as the "Smithers lot." The defendants also called witnesses, whose testimony tended to prove that in 1856 there were at least 276 acres of unseated land in the Benjamin Heacock tract, the only portions of it which were then occupied or improved and cultivated being the 100 acre parcel purchased by Abraham Turner in 1844, and the 40 acre parcel purchased by Thomas Thomas in 1854. In rebuttal, the plaintiffs presented testimony tending to show that the David Griffiths tract was returned by the assessor as seated in 1857, and that in fact a part of it had been cleared and cultivated for some years prior; that there had been a log house on it, which tumbled down and was never rebuilt, but which in the summer of 1856 was not too dilapidated to store hay in, and was used for that purpose; that no part of the land was plowed or sown in 1856, but there was a clearing of five to ten acres on which hay was raised, and this clearing had a fence around it.

At the close of the testimony, the court, CONNOLLY, J., charged the jury in part as follows:

The plaintiffs in this case allege, and it is agreed by the defendants, that in the year 1806 the legal title to the Benjamin Heacock tract, which he acquired by patent dated December 17, 1793, was in Dr. David Hosack. . . . .

[On October 27, 1863, if my memory serves me, a contract was entered into between Edward Dolph and John T. Everhart with the heirs of Dr. Hosack, in which the agreement stated that for a certain consideration named therein Edward Dolph and John T. Everhart were to have all the remainder of the land unsold or uncontracted for, that belonged to Dr. Hosack in the Benjamin Heacock tract.] [2] [Subsequent to the date of this agreement, a deed conveying the fee owned by the Hosack heirs in this land was made by them to the plaintiffs in this case.] [3] With this showing the plaintiffs rested, claiming they had shown a sufficient paper title. . . . .

Now, gentlemen, there are several questions for your consideration. . . . . We say to you unhesitatingly, that subsequent to the year 1806 the fee to this land or legal title thereto, was in Dr. David Hosack, and after his death the same was in

Charge of Court below.

his heirs. [With the title in the Hosack heirs to the balance of this land, particularly to the portion in dispute, there is no question here but they deeded their interest, if any they had, and that of course is to be determined by you as a fact, that any interest they had at that time in this portion in dispute, was deeded by them to the plaintiffs in this case.][4]. . . . .

The title claimed by the defendants is that of a tax sale. The first sale was in 1863 to Jacob M. Smithers. Subsequent taxes, it appears from the evidence, accrued upon this property, and it was sold again in 1868 for the taxes of 1865, 1866, and 1867, and sold to the county commissioners by the county treasurer, who held it for five years, when they sold it to Elizabeth Smithers, the widow of Jacob M. Smithers. She having died without having made any disposition of the property, her heirs made a quit-claim deed to the defendants in this case, and on that they base their title.

We say to you as a matter of law, gentlemen of the jury, that a title acquired by a tax sale is a good title to land, but there are certain facts which you will have to find before applying this principle of law. There is a conflict in the testimony. Three or four witnesses, . . . . . were called by the defendants in this case, and they testified that they had known this property prior to the year 1856, and that in 1856, and for sometime prior thereto and for sometime subsequent thereto, this was wild, unseated land; that it was uncultivated, unfenced; it was non-productive. On the other hand, there were certain witnesses called for the plaintiffs in rebuttal. . . . . who testify that they were acquainted with this property in the year 1856 and prior thereto; that portions of this land were used for grazing purposes, and that from portions of it hay was cut. And one of these witnesses, at least, testifies that he mowed hay from certain portions of this tract of land during the year 1856. Now, if that were the case, gentlemen of the jury, if this land were being tilled, and if it were being cultivated and crops taken from it, we say to you as a matter of law that it was not unseated land, and if returned by the assessor it was improperly returned as unseated land. But we submit this question as a matter of fact for you under the conflicting evidence of the witnesses, called respectively by the plaintiffs and defendants; we leave it as a matter of fact

for you to say, whether or not this land was cultivated, was being tilled and crops taken from it in the years 1856 and 1857, and prior thereto. . . . .

If you find from the facts, and from the evidence in this case, that at the time of the sale to either of the Smithers there were 276 acres of unseated land in this tract, that was originally in the warrantee name of Benjamin Heacock, then under that sale they took a good title to 66 acres of that land. And we say to you as a matter of law that if the 276 acres were unseated at that time, and they purchased 66 acres of that, they had a right anywhere on these 276 acres of unseated land to select their 66 acres, and they could select it out of that part, as they have, known as lot No. 13; but before you can say that, I repeat to you, that you must find that there were 276 acres of unseated land. If there were but 210 acres of unseated land, and you find that as a fact from the evidence, then the grantors of these defendants, the Smithers, simply bought a myth.

We are asked by the plaintiffs and by the defendants to charge you on certain points. We are obliged to answer these points in writing, gentlemen of the jury. We will first answer the points of the defendants.

1. Since the eastern boundary of the land conveyed to the plaintiffs by the deed on which they rely for recovery, is not given therein, it is to be ascertained by the three boundaries and the quantity of land called for by said deed. There is, therefore, no ambiguity in the deed, except such as is explained by the deed itself.

Answer: This point we affirm.

2. If the jury believe that the 66 acres of the Benjamin Heacock were sold for taxes in 1858 and the title became vested in Jacob Smithers, that fact, if known to the grantors, would furnish a reason for omitting the eastern boundary in the deed to Dolph and Everhart.

Answer: If the jury so find the fact, then we affirm this point.

5. If the jury believe that the 66 acres of the Benjamin Heacock tract, which were sold in 1858 to the county commissioners for the unpaid taxes of 1856 and 1857, were actually unseated in the year 1856, then the defendants have shown a good title in Jacob Smithers, under whom they claim.

Arguments.

Answer: If Jacob M. Smithers neglected to pay the taxes, and this property was again sold in 1868, for regularly assessed and returned taxes, the title he acquired was lost. We refuse, under the evidence, to affirm this point.[5]

We will now take up the points of the plaintiffs.

6. There being evidence that the Benjamin Heacock tract was divided and assessed, some in the seated and some in the unseated list, as against the paper title of the plaintiffs it is for the defendants to identify the part sold by the treasurer to be the same as that described in the writ; and if the defendants have failed in this, the verdict of the jury should be for the plaintiffs.

Answer: As we stated to you in our general charge, gentlemen of the jury, if you find there were but 210 acres of land in that tract, then your verdict should be for the plaintiffs. If you find, however, that there were 276 acres of land in that tract, then you may find in favor of the defendants. With this qualification we refuse to affirm this point.[6]

7. That if the jury believe from the evidence that the land described in the writ was embraced in the 210 acres upon which the taxes were paid by the Hosacks, these plaintiffs, or any one else for them, before the sale, then the treasurer's sales of 1858 and 1868, as to such land, were void, and their verdict should be for the plaintiffs.

Answer: This point we affirm.[7]

The jury rendered a verdict for the plaintiffs for the land described in the writ. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendants took this appeal, assigning for error:

1. The admission of plaintiffs' offer.[1]

2–4. The parts of the charge embraced in [ ] [2 to 4]

5. The answer to defendants' point.[5]

6, 7. The answers to plaintiffs' points.[6] [7]

*Mr. W. W. Lathrope* and *Mr. S. B. Price* (with them *Mr. J. E. Burr*), for the appellants:

1. The paper, purporting to be a contract between the Hosack heirs and the plaintiffs, was not admissible, for the reason that it was not signed by the Hosacks, and their assent to it was

not shown.   Flannery v. Dechert, 13 Pa. 505, relied on by the plaintiffs, differs from this case in that the contract there put in evidence was signed by the party against whom it was offered, and there were other circumstances, in addition to the possession of it, showing the assent of the other party.   Other reasons why the paper was not admissible, in the present case, are, that it furnishes no description of the land in question, and that there is no ambiguity in the deed made to the plaintiffs except such as is explained by the deed itself.   From the three well defined boundaries given in the deed, and the quantity of the land conveyed, the remaining boundary line may be ascertained: Fuller v. Carr, 33 N. J. Law 160 ; 2 Washburn on Real Prop. 630 ; Kirkland v. Way, 3 Rich. (S. C.) 4 (45 Am. Dec. 752) ; Winans v. Cheney, 55 Cal. 567 ; Field v. Columbet, 4 Sawyer 523.

2.  In the parts of the charge covered by the second and third assignments of error, the court drew inferences of fact which were based upon the paper improperly admitted in evidence, and which, if there was sufficient evidence to justify them at all, should have been drawn by the jury, not by the court; moreover, the latter portion of the charge was inconsistent with the affirmance of the defendants' first point.   The fourth assignment quotes an instruction which virtually left to the jury the construction of a deed ; and the answer to the defendants' fifth point was misleading, as it suggested the inference that the two tax titles clash with each other, whereas they have both become vested in the defendants.   The testimony indicated that the second tax sale was void, and the defendants have a right to rest upon the first.   In answering the plaintiffs' sixth and seventh points, the court presented to the jury the issue whether there were 210 or 276 acres of unseated land in the tract in 1856, while there was another question in the case which the charge ignored.

3.  That question was, whether the plaintiffs had made out a prima facie title to all the land in controversy ; whether there might have been more than 210 though less than 276 acres of unseated land in the tract.   On the plaintiffs' own showing there was a greater quantity than 210 acres.   Assuming that the whole of the 52 acres of the Griffiths tract had then been seated, the deduction of that from 276 would leave 224 acres.

But the clearing made prior to 1856 did not seat the whole 52 acres. The occupation of land by a squatter seats the land only to the extent of his claim: Ellis v. Hall, 19 Pa. 292; and, in this instance, the claim was defined by the fence which was placed around the clearing: Mitchell v. Bratton, 5 W. & S. 451. As to occupation by intruders, see further: Jackson v. Stoetzel, 87 Pa. 306; George v. Messinger, 73 Pa. 422. The intention of the owner to treat a tract as seated, or as unseated, is important: Kennedy v. Daily, 6 W. 274. They had paid taxes on 276 acres, including these 52 acres, as unseated land, in 1855 and prior years.

*Mr. Isaac P. Hand* (with him *Mr. Steuben Jenkins* and *Mr. W. A. Wilcox*), for the appellees:

The contract with the Hosack heirs was properly admitted: Flannery v. Dechert, 13 Pa. 505; Koch v. Dunkel, 90 Pa. 264; and a comparison of the portions of the charge complained of with the other parts of it, will show that all the questions of fact were fairly left to the jury. The calculation by which the defendants attempt to show that there were 224 acres of unseated land left after deducting the Griffiths tract, rests upon the fact that the six per cent allowance for roads was included in the assessment to make up the 276 acres returned. It was erroneous so to include it: Plank-Road Co. v. Thomas, 20 Pa. 91; Troutman v. May, 33 Pa. 455. Under the facts proved, the Griffiths lot was seated: George v. Messinger, 73 Pa. 418; Jackson v. Stoetzel, 87 Pa. 302.

OPINION, MR. JUSTICE CLARK:

The premises in dispute are admitted to be a part of a tract of land surveyed May 7, 1793, upon a warrant to Benjamin Heacock dated October 16, 1792, and situate on a branch of Spring brook, in the county of Luzerne, now Lackawanna, bounded on the north by lands of Thomas Starr, on the east by Isaac Bennett, on the south by Thomas Bennett, and on the west by lands of Daniel Heacock, containing 400 acres and the allowance. A patent issued September 6, 1796, to Joseph Thomas; and it is admitted that in the year 1806 the title to the whole tract became vested in Dr. David Hosack, who, sometime prior to April 27, 1863, died seised thereof.

Opinion of the Court.

The plaintiffs' claim of title to the portion of the tract now in dispute is under a deed from the heirs at law of Dr. David Hosack, deceased, dated November 21, 1868, in which sixteen different parcels and lots of ground situate in the township of Spring Brook, etc., are conveyed to the plaintiffs; the fourth piece, which, it is alleged, contains the land in dispute, is part of the Benjamin Heacock, and is described as being bounded on the north by the Thomas Starr, on the west by the Daniel Heacock, and on the south by lands formerly of Hosack, previously sold to other parties, containing about 70 acres, more or less. The eastern boundary was not given, and it is the eastern boundary which is in dispute.

The plaintiffs' claim now is to the eastern boundary of the original tract, and their claim embraces about 120 acres. It is contended that, as the northern, western and southern boundaries are given, in the absence of any calls for marks on the ground or for adjoiners, and of courses and distances, in the deed, the eastern boundary should be controlled by that portion of the description which designates the number of acres contained in the piece. This, as a general proposition, might perhaps be true; but the description in this deed, although containing some ambiguity, may be fairly construed to extend the boundary to the whole of the lands embraced in the writ. The description by quantity is in its nature the least certain of all the ordinary methods of description employed in deeds; it is introduced, in general, as matter of description, but it is at best the result of calculation, and, where the land is described by adjoiners, merely, it is often a mere estimate; that it was only an estimate in this instance is shown by the fact, that the land embraced in the deed is described as "about" 70 acres, "more or less." It is further described as a part of the Benjamin Heacock warrant, "the northern part thereof," and adjoining Thomas Starr. This description, as we have said, may readily be construed to cover the lands in dispute, but it is equivocal, and to some extent ambiguous; and, in view of this, it was competent to introduce parol evidence to give locality and identity to the subject matter of the conveyance.

Evidence to this effect was rightly received; among other things, it was shown that the Benjamin Heacock survey had prior to this time been divided into four distinct lots, to each

Opinion of the Court.

of which was given its number in a plan made by the owner, and it was argued that the description was also fairly applicable to one, or part of one, of these lots; that 66 acres of the land, composing a remnant of one of these lots, had been sold to one Smithers, who claimed title thereto, and had been paying taxes thereon; and that the land in dispute had for some years been known as the Smithers lot. The construction of the deed, or of the description therein, was in the first place for the court; but the introduction of these and other facts developed the latent ambiguity in the deed, which required the introduction of other evidence to explain and apply the real subject matter of the conveyance.

Bearing upon this question, the plaintiffs offered, and the court received in evidence, under exception, what purported to be an agreement under seal, dated October 27, 1863, for the sale of these lands by the Hosack heirs to Everhart and Dolph; and by the terms of that original agreement they sought to explain the deed, and to identify the extent of land which it was intended to embrace. If the execution of this contract had been shown, there can be no doubt that it was properly receivable in evidence for that purpose; although merged in the deed, the original agreement, in execution of which the deed was made, was undoubtedly competent evidence to explain the ambiguity, and to ascertain the true boundary according to the intent of the parties : Koch v. Dunkel, 90 Pa. 264. But the alleged agreement was not signed by the Hosack heirs, nor by any of them; it was signed by Everhart and Dolph only; and it was offered in evidence, not in behalf of the Hosack heirs, to charge Everhart and Dolph, but in the behalf of Everhart and Dolph themselves. The case of Flannery v. Dechert, 13 Pa. 505, is therefore not in point.

Besides, the statute of frauds requires that leases or sales of lands shall be in writing, and signed " by the parties making or creating the same," " or their agents thereunto authorized by writing; " and in Tripp v. Bishop, 56 Pa. 424, and in a number of cases both before and since, it was decided that such a writing must be signed by the grantor or his lawfully authorized agent. " It is, then, only the lessor or grantor," says Mr. Justice STRONG, in the case cited, " who is required to sign the agreement. His contract must be in writing and signed

by him; but the statute requires no written evidence of the engagement of a lessee or grantee." In such case, "nothing remains in parol but the agreement to pay the purchase money, and the statute does not require that to be in writing." To the same effect is Johnston v. Cowan, 59 Pa. 275.

The agreement, it is said, was found in the possession of one E. T. Emmett, a real-estate agent in the city of New York; one of the witnesses testifies that Emmett was the real-estate agent of the Hosack heirs, and that he was holding it, with other papers, for them. What was the nature or extent of his authority, or whether he had any power to dispose of this land, does not appear. But, as the agreement was not signed by the grantors, or by any one for them, it was of little consequence where it was found, as the Hosack heirs were not bound by it, and it does not appear that the deed was made in pursuance of it; indeed, it would rather appear that the deed was not made in pursuance of it, as the agreement was not signed, and the description in the agreement and in the deed are different. We are of opinion, therefore, that the court erred in receiving the alleged agreement in evidence.

The defendants' title is founded upon a sale of a part of the Benjamin Heacock tract for taxes for the years 1856 and 1857 on the unseated list. The tract originally contained 400 acres and the allowance; but for the years 1856 and 1857 Hosack was taxed with 276 acres only, the residue having passed into other hands. Some time prior to 1844, whilst Hosack was the owner of the tract, as we have said, it was subdivided into four equal parts or lots, numbered 13, 14, 19, and 20, as shown by a draft, a copy of which is found in the appellees' paper book. In 1844, one half of 19 and one half of 20, containing 100 acres and allowance, were conveyed to Abraham Turner. In April, 1854, 40 acres of the south half of 13 were deeded to Thomas Thomas; and on August 16, 1856, that part of 20 not sold to Abraham Turner was contracted to David Griffiths. Prior to the year 1856, therefore, Hosack had sold 100 acres to Turner and 40 acres to Thomas, and on August 6 of that year sold 50 acres to Griffiths. This left 210 acres and the allowance belonging to Hosack. In 1858, prior to the treasurer's sale, Hosack paid the taxes on 210 acres, and allowed 66 acres of the 276 embraced in the assessment to be sold.

The plaintiffs' contention is that 210 acres were all that in the year 1856 or 1857 were liable to taxation as unseated land; that the Griffiths lot was seated, and should have been assessed on the seated list, and that, having paid all that could be required of him, the sale of the 66 acres passed no title to the purchaser. The defendants contend, however, that the Griffiths lot was not seated in 1856, although in the year 1857 it is conceded to have been on the list of seated lands, and that, Hosack having paid taxes upon 210 acres only, the treasurer's deed was effective to vest the title to the remaining 66 acres in Smithers, under whom they claim. This raised a question of fact for the jury. Was the Griffiths lot, at the time of the assessment for the year 1856, seated or unseated? It is admitted that it was upon the seated list for 1857. Whether a tract of land is seated or unseated depends altogether upon the appearance it presents to the assessor at the time of the assessment. If it has been or is being improved by clearing or cultivation, or by the erection of a building upon it, or if the property shows such permanent improvements as indicate a personal responsibility for the taxes, it is the assessor's duty to enter it upon the seated list: Stoetzel v. Jackson, 105 Pa. 562. Land may be seated as well by an intruder as by an owner, to the extent of his possession and claim: Sheaffer v. McKabe, 2 W. 421; Jackson v. Sassaman, 29 Pa. 106. It is not the business of the assessor to inquire how the improver holds the property, whether by title perfect or imperfect, or no title at all: Stoetzel v. Jackson, supra. The assessor is to determine whether the land is seated or unseated from its condition and appearance, when he comes to assess the tax; if unseated, then, a subsequent occupation of it within the same year will not affect the validity of the sale: Murray v. Guilford, 8 W. 548. The sales to Turner and Thomas, and the clearing and improvements thereon, had separated the Griffiths lot from the residue of the tract. It was the subject of a separate possession and claim, and of a separate assessment, and if that lot was actually seated in 1856, although not entered upon the seated list for that year, Hosack had but 210 acres of unseated land; and, if he paid the taxes upon all the unseated land he had, there was none to sell. But, if the Griffiths lot was not seated, then Hosack had 276 acres of unseated land,

and his paying taxes upon 210 acres only, subjected to sale 66 acres, and the treasurer's deed vested the title in Smithers, who had a right to locate his purchase upon such part of the tract of 276 acres as he chose. The treasurer's sale in 1868, it is admitted, was of no validity. When the taxes for which that sale was made were assessed, Hosack had but 210 acres of unseated land, and he paid the taxes upon that amount; then the Griffiths lot is conceded to have been seated.

We have not discussed the evidence; as the cause goes back for a re-trial, it is better that we should not discuss it. The assignments of error have not been considered in their order; but we have indicated in a somewhat general way the principles upon which, in our opinion, the case should be tried.

The judgment is reversed, and a venire facias de novo awarded.