(77 South. 545)
BRUCE COAL CO. et al. v. BIBBY. (6 Div. 592.)
(Supreme Court of Alabama. Nov. 15, 1917. Rehearing Denied Dec. 24, 1917.)

1. MINES AND MINERALS ⬳70(1)—SUBLEASE —MINIMUM ROYALTY—TERM.
Where, the unexpired term of a coal mine lease at five cents per ton royalty being more than 13 years, the mine was subleased for 13 years, a provision in the sublease by which the sublessee guaranteed the leasing lessee a 7 cent royalty on a minimum of 50 tons daily after four months from date was a guaranty of such minimum royalty either until the full term of the sublease expired or until the coal was exhausted.

**2. MINES AND MINERALS ☞70(1) — MINING LEASE—ASSIGNS.**

Where a mining company, although not a party to a sublease, admitted transfer of the sublease by the sublessee to it, and that it undertook to operate the mine thereunder, it thereby accepted the sublease as a whole and became liable for royalty thereunder.

**3. ESTOPPEL ☞92(2)—MINING LEASE—ASSIGNS.**

Where a coal mining company, being a large stockholder in another coal mining company operating a coal mine under a sublease, undertook to carry out the sublease and mine coal thereunder, it was estopped from accepting the benefits and rejecting the burdens of the sublease.

**4. APPEAL AND ERROR ☞193(4)—OBJECTION BELOW.**

The objection that a bill was insufficient as one for an accounting or discovery could not, after answer, be raised for the first time on appeal.

**5. LANDLORD AND TENANT☞79(1)—SUBLEASE.**

Where coal mine lease conveyed a shorter term than the lessor had from the original lessor, and was of a shorter period than the unexpired term of the first lease, the later lease was an underlease, and not a mere assignment of the first lease.

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

In Equity. Bill by William Bibby against the Bruce Coal Company and others, for an accounting and discovery. From a decree for complainant, respondents appeal. Modified and affirmed.

The bill alleges that the complainant leased to one Mark Ellis certain lands for the purpose of mining coal therefrom under a lease contract, which sufficiently appears from Exhibit B to the bill; that Ellis assigned and transferred the lease to the Bruce Coal Company, and that thereafter and before the filing of this bill the Gayosa Coal Company in some way acquired said lease, and assumed to carry out its terms. Complainant does not know what amount of coal the Gayosa Coal Company has mined from under said lands, nor just when it acquired said lease, and does not know in what amount the said Gayosa Coal Company is indebted to complainant. Complainant alleges that the defendant Gayosa Coal Company, under some arrangement with the Bruce Coal Company, not only acquired said lease, but took possession of and got the benefit from a large amount of property of said Bruce Coal Company, which was on said leased premises while said lease was in force, and while the Bruce Coal Company was largely indebted to complainant for royalties on coal mined from said lands, and that complainant had and was entitled to enforce a lien upon such property for the said indebtedness of the Bruce Coal Company but complainant does not know just what said property consisted of, nor the value thereof, nor the amount of the indebtedness of said Bruce Coal Company to him under said lease. The complainant acquired his lease from Reese and M. J. Courington at an agreed royalty of 5 cents per ton of coal mined.

Tillman, Bradley & Morrow and Smith & McCary, all of Birmingham, and Ernest Lacy, of Jasper, for appellants. Harsh, Harsh & Harsh, of Birmingham, for appellee.

ANDERSON, C. J. [1] The lease contract, after providing for 7 cents per ton as royalty for the coal to be mined, contains the following provision:

"The party of the second part guarantees unto the party of the first part that royalty shall be paid for not less than fifty tons per day after four (4) months from date, whether such amount of coal be mined or not, and at the end of each month, from date of this lease, if an amount equal to the royalty of fifty tons per day, at seven (7) cents per ton, has not been paid, then the party of the second part agrees to make good such shortage."

It is manifest from this clause of the contract that the parties contemplated active mining operation after the expiration of four months, and the lessee undertook to guarantee a daily output of a minimum amount of 50 tons per working day, during the life of the lease, 13 years, unless sooner terminated by exhausting the merchantable, minable coal. In other words, this was a guaranty that the lessor should receive an income monthly equal to the royalty of seven cents upon 50 tons per day, whether so much coal was mined during said month or not, and which was to continue, either until the term of the lease expired or the coal was sooner exhausted. It may be that this construction of the contract might operate to charge the respondents with royalty upon more tons than there were in the mine, but with this the court is not concerned, as the parties make contracts and not the courts. Moreover, this clause of the contract was of considerable importance to the complainant Bibby; he was holding the mineral right under a lease which expired shortly after the lease in question; he was making a profit of two cents upon the royalty, and he evidently contracted against any delay in mining, which would deprive him of the benefit of said profit. Again, the respondents would have been amply protected against such a contingency by complying with the lease in getting out the requisite number of tons until the coal was all mined, for as soon as it was exhausted the lease would have terminated. This holding in no wise conflicts with the case of Brooks v. Cook, 135 Ala. 219, 34 South. 960, and other cases cited by appellant's counsel, and there is no need for an application of said cases to the present contract, as it, by its own terms, relieves the lessee of liability for a royalty if the coal was not there and if the proof showed there was no coal to mine, the respondents would not be liable for the royalty, or if it was there, they would

not be liable for any period after the same had been exhausted. Here there was coal, and the lessee undertook to guarantee the mining of same to the extent of 50 tons per day until the expiration of the lease unless the supply was sooner consumed. We think that the lower court, in its decree, had the proper conception of the contract, but as the cause was submitted upon the proof it should have determined the period at which the payment of the royalty should cease and not left it to the register; and we think that the coal, under the weight of the evidence, was practically exhausted so as to prevent a profitable continuation of the mining operations when the Gayosa Company abandoned said mine during the year 1906, and that the royalty should be charged as up to that date and not to the end of the lease.

[2, 3] It is true the coal companies were not parties to the lease between complainant and Mark Ellis, but the Bruce Company admitted a transfer by Ellis to it, and that it undertook to operate the mine under said lease; and we do not see how it can be permitted to accept only so much thereof as it desires and reject such portions thereof favorable to the complainant and made for his protection. The lease provided a fixed price for the coal and for a minimum monthly royalty, or rent, until the lease terminated, either upon the expiration of the time covered or until the coal was practically exhausted, and it of course became liable for such royalty or rent as was fixed by the lease. The Gayosa Company did not claim to be the assignee of the lease from the Bruce Company, but, being a large stockholder in the said company, it undertook to carry out the said lease, and proceeded to mine coal thereunder, and it too is estopped from accepting the benefits and rejecting the burdens.

[4] It is urged in brief in behalf of the appellant that the bill is without equity, for the reason that, as a bill for an accounting, it does not sufficiently negative an adequate remedy at law, and is insufficient as a bill for discovery, as answer under oath was waived. It is sufficient to say that this point was not suggested by a demurrer in the lower court, and is not presented by any of the assignments of error, and whether the bill is or is not sufficient as one for an accounting or discovery we need not decide. The chancery court has jurisdiction of the subject-matter, that is, of discovery and an accounting, and if the bill was not sufficient, the point should have been made against it in the lower court, and these respondents, having failed to do so, and having answered the bill, cannot now raise the point for the first time in this court. Penny v. British Mortgage Co., 132 Ala. 357, 31 South. 96; Smith v. Roney, 182 Ala. 540, 62 South. 753; Cassells Mills v. First Nat. Bank, 187 Ala. 325, 65 South. 820; Bell v. McLaughlin, 183 Ala. 553, 62 South. 798.

[5] It is next urged that this case should be reversed for want of a necessary party, that is, the owner of the land, and that the point is available upon this appeal though not made in the lower court. We may concede that the absence of an indispensable party will be noticed upon appeal whether raised in the lower court or not, but we are not persuaded that Courington, the original lessor, or his vendee, Shackleford, are necessary parties. Counsel contend that they are, upon the idea that the lease between complainant and Mark Ellis was but a mere assignment of the lease existing between complainant and Courington, and not what is termed a grant of a term of an "underlease." We think the very authority cited and quoted from (Taylor's Landlord and Tenant, §§ 426, 428, 16) settles the question contrary to the appellants' contention. "If the grantor conveys a shorter term, or a less estate, than he himself had in the premises * * * this is not an assignment of the freehold, but only a grant of a term, and will, in neither case, amount to anything more than an underlease." "If a lessee disposes of the term granted to him, reserving any portion thereof however small, the instrument will operate as an under lease." The lease from Bibby to Ellis conveyed a shorter term than Bibby had under the lease from Courington, and was of a shorter period than the unexpired term of said first lease. The complainant not only granted a lesser estate as to time, but as to consideration as well, and therefore reserved unto himself a portion of the rights acquired by him under the first lease.

The decree of the lower court is modified, and, as modified, is affirmed.

Affirmed.

MAYFIELD, SOMERVILLE, and THOMAS, JJ., concur.