(102 So. 49)

### HOLT v. CITY OF MONTGOMERY.
(3 Div. 668.)

(Supreme Court of Alabama. Oct. 16, 1924. Rehearing Denied Nov. 27, 1924.)

**1. Licenses ☞58(1)—Revocable unless coupled with an interest.**

A mere license is generally revocable at pleasure unless coupled with an interest.

**2. Licenses ☞44(2)—Distinguished from "lease."**

A lease is a contract for possession and profit of land by lessee and recompense of rent to lessor, and is grant of an estate in land, while a license is authority to do some act on land of another for benefit of licensee without passing estate in land.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Lease, License.]

**3. Licenses ☞44(2)—Exclusive possession against all world test in determining whether lease or license.**

In determining whether contract is a lease or license, principal test is whether or not it gives exclusive possession of premises against all the world including owner, thus constituting a lease, or whether it merely confers a privilege to occupy under owner, thereby indicating a license.

**4. Licenses ☞44(2)—Mines and Minerals ☞55(3)—Tests in determining whether contract for removal of products or mineral rights is lease or license, stated.**

In determining whether contract granting right to enter grantor's land and remove products or minerals therefrom, is a lease or license, consideration will be given to whether grantee acquires estate in land empowering him to maintain ejectment, whether consideration is for entire subject conveyed by title, and whether contract contains any words of grant or demise.

**5. Licenses ☞44(2)—Contract for removal of gravel held to constitute a license coupled with an interest.**

Where a contract between owner of gravel pit and city stated that owner sells to city gravel as it may need, granted right of ingress and egress, city to pay for gravel in monthly installments, contained no words of demise or grant, and was not witnessed *held* that it constituted license coupled with an interest, that is, right to remove gravel during life of contract, and not a lease.

**6. Sales ☞384(2)—Difference between contract price and market price at time of default measure of damages for buyer's refusal to complete contract.**

Where contract for sale of gravel stipulated minimum amount to be purchased and valuation thereof, on buyer's refusal to complete contract. seller's measure of damages was the difference between contract price and market price at place and time of default, and not contract price, on theory that valuation constituted liquidated damages; fact that buyer had right of ingress and egress not affecting nature of contract.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Action for breach of contract by Dan S. Holt against the city of Montgomery. From a judgment granting defendant's motion for a new trial, plaintiff appeals. Affirmed.

The contract, the basis of the suit, is as follows:

"State of Alabama, Montgomery County.

"This agreement, made and entered into this the 8th day of November, 1919, by and between the city of Montgomery, Ala., hereinafter called the city, Ray Rushton, as receiver of Montgomery Light & Traction Company, his successors and assigns, hereinafter called the Company, and Dan S. Holt, witnesseth:

"(1) Said Holt hereby sells to the city such gravel as it may during the life of this contract desire to purchase, and shall remove from

property owned by him at Pickett Springs near the city of Montgomery, Ala., and known as Holt's gravel pit, at and for the price of ten cents (10c) per cubic yard for such gravel as is actually removed from said pit, settlement therefor to be had monthly, in accordance with the records of the city engineer of said city; and for the purpose of removing said gravel hereby grants unto the city all rights of ingress and egress over any lands owned by him with right of way for roads and tracks, poles, wires, and switches.

"(2) The city agrees to remove and pay for a minimum of thirty thousand (30,000) cubic yards of said gravel within two years from the date of this agreement, but reserves the right to remove and pay for as much more than this amount as its needs may require; the city agrees at its own expense promptly to load such cars as may be placed upon siding at said pit at its request, and agrees to unload promptly at its own expense upon delivery at such points in the city of Montgomery as it may designate all gravel loaded by it upon cars of the company, and agrees to pay the company for hauling such gravel as the city may load and designate delivery for the sum of fifty-two cents (52¢) per cubic yard payable at the end of each calendar month, based upon the records of the city engineer of the city.

"(3) The city further agrees and binds itself to furnish to the company, loaded upon cars at the pit, such gravel as it may need to ballast its tracks at actual fuel and labor cost to the city, of excavating and loading said gravel plus royalty to said Holt and plus a profit to the city of 12 per cent. of such cost.

"(4) The company agrees, at its own expense, to lay all necessary tracks into said pit, and the city agrees at its own expense to make such changes and extensions thereafter as it may desire. The company agrees promptly to transport such gravel as may be loaded by the city, and agrees to furnish at its own expense for the purpose of transporting said gravel not less than four cars of a minimum capacity of nine cubic yards each, and will, whenever requested by the city, cause at least two of said cars to be kept at said pit for purpose of loading. The company agrees promptly to transport and deliver at any point upon any of its lines within the city of Montgomery, as may be designated by the city, such gravel as may be loaded by the city, and agrees, free of charge, to transport to and from said pit and to and from points of delivery working men and employees of said city, on work cars only, engaged in loading or unloading said gravel; the company agrees to receive, transport, and deliver, as loaded and upon the direction of the city, not less than 100 cubic yards of gravel per working day. The company further agrees that any lease now existing between it and said Holt is altered to permit the sale and removal of gravel under this agreement.

"(5) It is understood and agreed, however, that except as herein expressly mentioned, the lease now existing between said Holt and Montgomery Light & Traction Company, or Ray Rushton as receiver thereof, is in no wise altered. This agreement and contract to remain in force and effect until November 1, 1921.

"In witness whereof, the said parties have hereunto set their hands and seals in triplicate, the day and year first above written. City of Montgomery, by W. A. Gunter, Jr., President Board City Commissioners. Ray Rushton, as Receiver of Montgomery Light & Traction Company, Their Successors and Assigns. D. S. Holt."

Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellant.

The contract sued on was a contract of lease. U. S. v. Gratiot, 14 Pet. 535, 10 L. Ed. 573; Ferris v. Hoglan, 121 Ala. 240, 25 So. 834; 18 R. C. L. 1188; 17 R. C. L. 564; Caldwell v. Fulton, 31 Pa. 475, 72 Am. Dec. 760; 16 R. C. L. 550; Miller v. Woodard, 207 Ala. 318, 93 So. 28; Knight v. Indiana Coal Co., 47 Ind. 105, 17 Am. Rep. 692; Massot v. Moses, 3 S. C. 168, 16 Am. Rep. 697. The true measure of damages was three thousand dollars less all sums paid by the defendant to the plaintiff under the contract. 27 Cyc. 712; Bruce Coal Co. v. Bibby, 201 Ala. 121, 77 So. 545; Johnston v. Cowan, 59 Pa. 275; Woodland Oil Co. v. Crawford, 55 Ohio St. 161, 44 N. E. 1093, 34 L. R. A. 62.

Ludlow Elmore and Arthur B. Chilton, both of Montgomery, for appellee.

The contract in suit was not a contract of lease, but created a license. Tiffany on Real Property, 678; 25 Cyc. 640; Williams v. Gibson, 84 Ala. 228, 4 So. 350, 5 Am. St. Rep. 368; Stinson v. Hardy, 27 Or. 584, 41 P. 116; Riddle v. Brown, 20 Ala. 412, 56 Am. Dec. 202; Code 1907, § 3355; Morrill v. Mackman, 24 Mich. 282, 9 Am. Rep. 124; Stewart v. C. W. & M. Ry., 89 Mich. 315, 50 N. W. 852, 17 L. R. A. 539. The measure of damages is the difference between the contract price and the market price.

GARDNER, J. Appellant sued appellee for the breach of a certain written contract, recovering a judgment for the full amount sued for, the trial court having given at his request the affirmative charge with hypothesis in appellant's favor. A motion for a new trial was filed by the defendant, and upon consideration of this motion the trial court granted the same and set aside the judgment theretofore entered, and from the judgment of the court granting the motion for a new trial the plaintiff has prosecuted this appeal.

Counsel for appellant treat the case as if count 4 alone appeared in the complaint, and consider that the result of this appeal turns upon a proper construction of the contract made an exhibit to this count. This contract appears in full in the report of the case.

Plaintiff insists that this contract properly construed is in fact a lease of his gravel pit, and that the minimum amount of gravel which the defendant agreed to purchase constitutes rent, while the defendant urges that it was merely a sale by the plaintiff to the

defendant of a certain quantity of gravel at a given price, with license to the defendant to go upon the land for the purpose of removing the gravel.

[1, 2] Licenses are often granted upon such terms and conditions and upon considerations which ally them so closely to leases, that it is frequently difficult to distinguish between them. A mere license, as that term is generally used, is revocable at pleasure (17 R. C. L. 576; Riddle v. Brown, 20 Ala. 412, 56 Am. Dec. 202), but when coupled with an interest, may lose the quality of revocability. 17 R. C. L. 581. In this latter authority, on page 582, it is said:

"That while a license coupled with an interest is irrevocable, this doctrine, although unquestionably correct in a qualified sense, can only be considered as applicable to the temporary occupation of the land, but confers no right or interest in the land itself."

The distinction between a lease and a license appears to be very well stated in a quotation found in Stinson v. Hardy, 27 Or. 584, 41 P. 116, as follows:

"A lease is a contract for the possession and profit of land by the lessee, and a recompense of rent or increase to the lessor, and is a grant of an estate in the land. * * * A license is an authority to do some act or series of acts on the land of another, for the benefit of the licensee, without passing any estate in the land; and when the license is to mine upon the land of another, the right of property in the minerals, when they are severed from the soil, vests in the licensee."

The above authority, with that of Massot v. Moses, 3 S. C. 168, 16 Am. Rep. 697, contains a very full discussion with a review of the authorities upon this subject and the distinction here involved.

[3] One of the principal tests in determining whether or not the contract is to be interpreted as a lease or a license is whether or not it gives exclusive possession of the premises against all the world, including the owner, in which case a lease is intended, or whether it merely confers a privilege to occupy under the owner, thereby indicating a license. 25 Cyc. 640. See, also, Williams v. Gibson, 84 Ala. 228, 4 So. 350, 5 Am. St. Rep. 368.

Upon the question of exclusive right, it was said in Massot v. Moses, supra, that:

"Grants of a right to enter the lands of the grantor and sever therefrom and appropriate its products or mineral contents, are subject to a presumption not applicable to the case of a sale of personalty, that the grantor did not intend to exclude his own proprietary right to a concurrent enjoyment with the licensee of the power granted. * * * The presumption, indeed, demands some positive evidence of an exclusive intent, but does not influence the force of the evidence of such intent."

[4] Of course, the intent to exclude the grantor may appear by necessary implica-

tion of the language used, and the nature of the consideration. As to the latter, however, it has been held that the fact that the grantee is bound to pay for the substance appropriated by him, according to the quantity realized at an agreed rate, whether in kind or in money, does not of itself disclose an intent to exclude the grantor. In Stinson v. Hardy, supra, the court points out other considerations which have had material bearing upon the question of construction of contracts, as to whether or not they were intended as a lease or a license, among them that the consideration mentioned was single for the entire subject conveyed by the title, as in Caldwell v. Fulton, 31 Pa. 475, 72 Am. Dec. 760. Another test is there stated to be, "whether the grantee has acquired any estate in the land in respect to which he may maintain ejectment." Still another important fact given consideration in that authority was the absence of words of grant or demise from the agreement, which, it was held, would indicate that it was the intention of the parties that the instrument should not operate as a lease.

[5] The contract here in question does not purport upon its face to be a lease or a conveyance of an estate, but rather a sale by the plaintiff to the defendant of certain gravel with certain rights as to the removal thereof. Indeed, its first paragraph begins:

"Said Holt hereby sells to the city such gravel as it may during the life of this contract desire to purchase, and shall remove from property owned by him at Pickett Springs."

The right of ingress and egress over the lands of the plaintiff, with a right of way for roads and tracks, expressly granted in the contract, were such rights as would seem to follow by necessary implication from a sale of the gravel in the pit, with the right of the city to remove it therefrom. As said in Williams v. Gibson, supra,

"This is the result of the familiar maxim that when anything is granted, all the means of obtaining it and all the fruits and effects of it are also granted."

We find nothing in the language of the contract, either in express language or by necessary implication, which would exclude Holt, the owner, from possession of the premises, nor, indeed, would the contract seem to exclude Holt from the use and removal of the gravel from his pit, so long as it did not interfere with the express rights granted to the city. One of the principal tests, nonexclusiveness of the the grant, indicates a license rather than a lease, and very clearly under this contract plaintiff could not maintain ejectment against Holt, the owner.

The consideration mentioned was not single, but the city was to pay for the gravel as it removed the same, so much per cubic

yard, with monthly installments. The contract appears to have been carefully drawn; it not only contains no words of demise or the grant of an estate in land, but was not witnessed as would be necessary for the conveyance of such an estate.

Without further discussion, however, we are of the opinion that the contract here in question does not meet any of the tests of a lease or a demise of an estate in land, but that the privileges enumerated therein granted to the city, constitute a license coupled with an interest, that is, a right of removal of the gravel during the two years' life of the contract.

We have read with much interest and care the authorities relied upon by counsel for appellant, among them Woodland Oil Co. v. Crawford, 55 Ohio St. 161, 44 N. E. 1093, 34 L. R. A. 62; U. S. v. Gratiot, 14 Pet. 526, 10 L. Ed. 573; Johnston v. Cowan, 59 Pa. 275; Bruce Coal Co v. Bibby, 201 Ala. 121, 77 So. 545. But we are not persuaded that these authorities militate against the conclusion which we have here reached. They each involve contracts materially different from that here under consideration, and we do not consider that a discussion of these authorities would serve any useful purpose.

[6] It is insisted in the second place, however, that whether the instrument here in question be considered a lease or a license, the plaintiff was entitled to recover for the minimum quantity of gravel agreed by the city to be purchased and removed, less the amount which the city had already paid. This upon the theory that the valuation of this minimum amount of gravel was fixed by the parties as liquidated damages. The authorities cited deal with leases where a minimum royalty is fixed. Bruce Coal Co. v. Bibby, supra; Johnston v. Cowan, supra.

In the case of Woodland Oil Co. v. Crawford, supra, the contract expressly granted, demised, and let all the petroleum and gas in or under the land therein described, and also the land itself, with the exclusive right of drilling and operating upon said premises; and expressly provided that a yearly rental of $128 be paid for the premises in the event of default on the part of the parties of the second part.

Much stress is laid by counsel for appellant upon the privilege granted to the city of a right of way, and of ingress and egress over the land of the plaintiff, but it is very clear that the essence of the contract was a sale of the gravel, and that these privileges constituted but an incident thereto, and, indeed, under the authority of Williams v. Gibson, supra, may have arisen by necessary implication.

The contract, as we construe it, in its essence, was a contract to sell gravel, and for a breach of such contract the measure of damages is not the contract price, but the difference between the contract price and the market price or selling price at the place and time of default. Patterson Lbr. Co. v. Daniels, 205 Ala. 520, 88 So. 657.

We, therefore, do not find ourselves in accord with the appellant's counsel as to their contention with reference to liquidated damages. We are of the opinion the trial court correctly ruled in granting the motion for a new trial, and the judgment to that effect will be here accordingly affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.