# Penny *v*. British & American Mortgage Company.

## *Statutory Action in the Nature of Ejectment.*

[Decided December 20, 1901.]

1. *Deed to two persons jointly, what title is vested.*—A deed to two persons named vests the title in them as tenants in common, each taking an undivided moiety in fee.

2. *Mortgage by husband and wife of property owned by them as tenants in common; when wife's moiety not conveyed.*—A mortgage of property owned by husband and wife as tenants in common, in which the wife is not mentioned except as releasing and conveying her rights of dower and homestead in the premises conveyed, is not operative to convey her undivided interest in the land, although signed and acknowledged by both.

3. *Conveyance of homestead; separate acknowledgment; when certificate insufficient.*—A conveyance of the homestead is void, where neither the certificate of separate acknowledgment of the wife, nor the recitals of the conveyance, show that the peron acknowledging was "known or made known to the officer to be the wife of the within named," other grantor,—it not being in substantial conformity to § 2034 of the Code.

4. *Res judicata, decree of chancery court as to validity of conveyance of homestead.*—The decree of the chancery court, on a bill filed by the grantor in a deed to set aside a deed of land on the ground that the land was his homestead and the deed was not executed as required by law for conveyances of the homestead, is *res judicata* against the claim of such grantor that the property was his homestead, interposed by him as a defense to an action of ejectment.

5. *Res judicata, decree in a cause in which the bill is wanting in equity.*—Where a bill in equity was filed by the grantor in a conveyance to set aside and vacate, as a cloud on his title, a conveyance of his homestead, upon the ground that it was not executed as required by statute governing conveyances of the homestead, and this question is put in issue by the answer and evidence taken thereon, and a decree rendered that complainant is not entitled to the relief prayed and dismissing

the bill, such a decree is *res judicata* against a similar claim of the grantor when afterwards asserted by him as defendant in an action of ejectment,—and this although the bill was wanting in equity for failure to show that complainant, at the time it was filed, was in possession of said land.

6. *Bill to remove cloud from title; how defects is waived.*—Where a bill to remove a cloud from title is wanting in equity for failure to aver that complainant is in possession of the land, or facts giving him a right to sue while out of possession, such defect is waived by defendant failing to demur to the bill or move to dismiss for want of equity and by proceeding to trial upon the merits.

APPEAL from Cherokee Circuit Court.

Tried before Hon. J. A. BILBRO.

The opinion states the facts.

MATTHEWS & WHITESIDE, and H. D. McCARTY, for appellant. (1.) The mortgage from Lancaster and wife was void for want of proper certificate of separate acknowledgment.—*Alford v. Lehman,* 76 Ala. 326; *Striplin v. Cooper,* 80 Ala. 256; *Strauss v. Harrison,* 79 Ala. 324; *Grider v. Mortgage Co.,* 99 Ala. 281. (2.) The decree of the chancery court was not *res judicata.*—2d Parsons on Contr., (7th ed.), 800; *Stapp v. Wilkinson,* 80 Ala. 47; *McIntosh v. Parker,* 82 Ala. 340; *Belcher v. Scruggs,* 27 So. Rep. 839; *Williams v. Lawrence,* 26 So. Rep. 647; *Lockard v. Lockard,* 16 Ala. 427; *Phelps v. Harris,* 11 Otto, 370; *Bennett v. Holmes,* 1 Dev. & Bat. 486; *Fulton v. Hanlon,* 20 Cal. 451; *Wright v. Deklyne,* 1 Peters C. C. 198; *Pleasants v. Clements,* 2 Leigh, 474; *Burchet v. Faulkner,* 1 Dana, 99; 4 Phil. Ev. (C. &H. Notes), 9; note 12.

HOOD & MURPHREE, *contra,* on the question of *res judicata,* cited *Strang v. Moog,* 72 Ala. 460; *Tankersley v. Pettis,* 71 Ala. 179; *McDonald v. Mobile Life Ins. Co.,* 65 Ala. 358; *Moon v. Crowder,* 72 Ala. 79; *Smith v. Kernachan,* 7 How. 198; *Lee v. Thompson,* 99 Ala. 95; *Chiles v. Champenois,* 13 So. Rep. 840.

McCLELLAN, C. J.—This is a statutory action in the nature of ejectment prosecuted by the mortgage

company against Penny. Plaintiff deraigned title, by mesne conveyances, from the defendant. It claimed that Penny conveyed to G. W. Lancaster and Martha E. Lancaster, who were husband and wife, and that said Lancasters conveyed to it by mortgage which had been foreclosed the company becoming the purchaser at foreclosure sale and receiving a deed thereunder. The defendant attacks the first and second links in this alleged chain of title. His contention is, *first,* that the deed executed by him to the Lancasters was and is void because the land constituted his homestead and the instrument was not executed nor attempted to be executed by his wife; and, *second,* that, assuming the validity of his deed to the Lancasters, and assuming further that they both joined in the mortgage to plaintiff, that mortgage was void for that at its date the land constituted their homestead and the instrument was not acknowledged by her as required by the statute. And he contends further that in any event the plaintiff acquired through its mortgage only the undivided one-half interest of G. W. Lancaster in the land for that Martha E. Lancaster joined therein only for the purpose of releasing and conveying her rights of dower and homestead. If either the first or second position of defendant was upported on the trial beyond controversy, the defendant was entitled to the affirmative charge which he requested, and which the court refused to give; and if the third position was well taken and the others not, plaintiff was entitled to recover only the interest of G. W. Lancaster in the land sued for. We will consider these contentions of the defendant below as they have been presented in the brief for appellant here—in the inverse order of their statement above.

Assuming for the discussion of this and the succeeding point that Penny's deed passed a good title, it is most clear and is not disputed that such title vested in G. W. Lancaster and Martha E. Lancaster as tenants in common each taking an undivided moiety in fee. The mortgage to the plaintiff company begins thus: "This indenture made and entered into this the 12th day of December, A. D. 1891, by and between George W. Lancaster, of the county of Cherokee and State of Alabama,

party of the first part, and the British and American Mortgage Company, Limited, party of the second part, witnesseth: That whereas the party of the first part has borrowed of the party of the second part three hundred dollars in gold, the receipt of which is hereby acknowledged, and has given the following described five installment notes," etc., etc., describing said five notes, and reciting that five interest notes have also been given and describing them, etc., etc., and thus proceeding: "And whereas said party of the first part desires to secure said indebtedness, principal and interest, as said obligations respectively fall due: Now therefore, in consideration of the premises and one dollar in hand paid, the party of the first part has granted, bargained and sold, and by these premises does grant, bargain, sell and convey to the party of the second part," etc., etc., "a certain tract or parcel of land;" etc., etc., describing the land: "To have and to hold," ets., etc.; "and the party of the first part represents and covenants," etc., etc., setting out the usual covenants. Following the covenants is the only reference in the instrument directly or indirectly to Mrs. Lancaster. It is this: "And Martha E. Lancaster, wife of said G. W. Lancaster, of the first part, hereby expressly releases and conveys all rights of dower or homestead in and to said premises." Then follows the defeasance clause and divers stipulations between the company and G. W. Lancaster, but none with his wife; and the instrument concludes thus: "In witness whereof the said party of the first part has hereto set his hand and seal the date hereinbefore written;" and under this appear the signature of G. W. Lancaster and Martha Emeline Lancaster. It is too plain for argument or discussion, we think, that on the general principles reiterated and illustrated in the cases of *Long v. Mostyn*, 65 Ala. 543; *Thompson v. Sheppard*, 85 Ala. 611; *Fite, Porter & Co. v. Kennamer*, 90 Ala. 470, and *Burrows v. Pickens*, 129 Ala. 648, this mortgage did not convey Mrs. Lancaster's undivided moiety in the land, but as to her was only operative to release her inchoate dower and

if properly acknowledged, her homestead interest in that undivided half interest which belonged to her husband.

There was evidence before the jury tending to show that at the time of the alleged execution of the mortgage to the plaintiff Lancaster and his wife were occupying the land as a homestead, its area being less than one hundred and sixty acres and its value less than two thousand dollars. In view of this evidence the giving of the affirmative charge for the plaintiff cannot be justified unless the certificate of the separate acknowledgement of Martha E. Lancaster complies substantially with the provisions of section 2034 of the Code and with the form there prescribed. That certificate is as follows: "State of Alabama; Etowah county: I, John C. Pugh, notary public in and for said county, do hereby certify that on the eighth day of December, 1891, came before me the within named Martha Emeline Lancaster who being examined separate and apart from her husband, touching her signature to the within mortgage, acknowledged that she signed the same of her own free will and accord without fear, constraint or threats on the part of her husband. In witness whereof, I hereunto set my hand this 18th of Dec., 1891. John C. Pugh, notary public." There is a discrepancy in this certificate in respect of dates. The date of the mortgage is December 12, 1891. The notary certifies that the party came before him, etc., on "eighth day of December, 1891," which was before the instrument was signed. But he further affirms that he sets his hand to the certificate "this the 18th of Dec., 1891." It is probable that there is a misprision in the record before us in respect of the time Martha Emeline Lancaster came before the officer, and that in the original certificate that date is the 18th instead of the 8th. And it may be that such a discrepancy even in the original would not be vitiating. Anyway as to that we lay no stress upon it now. But it will be observed that this certificate entirely omits the following words of the form: *"known to me (or made known to me) to be the wife of the within named"*—and, of course, omits the name of G. W. Lancaster which should

come after the word "named." Not only so, but there are no other words employed in the certificate in substance the same, or in any way to take the place of those thus omitted. Indeed the other words of the certificate are those only which are in the prescribed form; and they having offices of their own to perform different from those intended to be served by the omitted words and hence necessarily not meeting the exigency intended to be met by the latter cannot be availed of to supply the fact required to be stated in the words quoted. Nor can the fact be supplied by reference to the instrument. There is nothing in that, and in the nature of things could not be, to show that the Martha Emeline Lancaster who appeared before the officer was known or was made known to him to be the wife of G. W. Lancaster. That these words have a very important office to perform, being the record of the *quasi* judicial ascertainment of the fact that the person making the acknowledgement is the wife of the grantor, and that a certificate not containing them or others of like import is not substantially in the form prescribed and, therefore, is of no efficacy, there can, we think, be no doubt. It is said in the cases that liberality of interpretation of such certificates will be indulged, but no case goes further than to hold that a substantial following of the prescribed form will suffice; and when it is considered that the statute itself requires only that the certificate shall be *substantially* in the form prescribed it seems to be inapt to say that the rule adopted in the cases is a liberal one: It is indeed strictly in accordance with the letter of the law to say that the form must be substantially pursued. The cases do hold that a certificate is to be read in connection with the instrument and if when so read all the essential facts are shown by it this is a substantial compliance with the statute and the form, but there is no operation in this case, as we have seen, for that doctrine. The true rule in this connection is stated and its application illustrated in the case of *Gates v. Hester*. There the certificate affirmed that the person acknowledging, Amanda Hester, was the wife of R. B. Hester, who was the

grantor, and that she was known to the officer. This was held to be in substance an affirmation that Amanda Hester was known to the officer to be the wife of R. B. Hester, and, therefore, substantially in the prescribed form. The court said: "Such certificates should and always have received a liberal construction by this court. Literal compliance with the statutory forms is not exacted. To avoid making the security and validity of titles dependent on strict phraseology, the settled rule of construction in respect of such certificates is, that a substantial compliance is sufficient. While, in order that there may be substantial compliance, *words must be used of equivalent import and meaning with those employed to express the legislative intent,* nice shades and distinctions of signification, and mere verbal criticisms should not be observed or regarded. In prescribing a form of certificate, the purpose is to procure satisfactory and permanent evidence of the voluntary signature and assent of the wife in conformity with the constitutional mandate, that a mortgage or other alienation of the homestead by the owner, if a married man, shall not be valid without such signature and assent. *To this end, a form is provided, the substantive requisites of which are, that the person who comes before the officer to be examined is known, or made known to him to be the wife of the grantor;* that she was examined separate and apart from her husband touching her signature to the conveyance; and acknowledged that she signed the same of her own free will and accord, and without fear, constraint, or threats on the part of her husband.' If by the certificate in question, the officer has substantially certified these essential facts, a compliance with the statutory requisites is shown, and the sufficiency of the certificate must be upheld, when the rule of construction, settled by judicial decisions independently of the statute, and affirmed by the statute, is applied. *It was intended by requiring the officer to certify that the person examined is known or made known to him to be the wife of the grantor, to prevent another from impersonating the wife.* Any portion of a deed may be examined to give effect and meaning to a certificate, which is apparently defective.'—*Brad-*

*ford v. Dawson,* 2 Ala. 203, (*Sharpe v. Orme,* 61 Ala. 263). The mortgage and the certificate considered together show that Amanda Hester, named in each as the wife of the mortgagor, and who signed the same, is the same person who was examined by the officer, *and who he certifies is known to him.* The mortgage and the certificate bear the same date, manifesting that the signature and the examination were on the same day. By a comparison and examination of them, the supposed failure of the officer, to certify that the person examined is known to him to be the wife of the mortgagor, is supplied. *The recitals of the certificate are untrue unless she was known to the officer to be the wife of the mortgagor.*—81 Ala. 358-9. It seems to us that too much stress was laid by the learned Justice, from whose opinion the foregoing is quoted, upon the coincidence in time of the signature and the certificate; and we, therefore, attach no significance against the certificate in the present case to the fact that the signature was of one date—December 12th, 1891—and the certificate was of a different date—December 18th, 1891. And, as we have before said, there is nothing in the instrument here to aid the certificate; and it must stand or fall upon its own terms. The application of the principles declared in the excerpt given above from the opinion in *Gates v. Hester,* and especially in those parts of it which we have italicized, to the case before us forces the conclusion that this certificate is not a substantial compliance with the statute and does not substantially pursue the form prescribed by the statute. There is no affirmation in it that Martha Emeline Lancaster was the wife of G. W. Lancaster, or that she was known or made known to the officer to be his wife, nor even that she was known to be Martha Emeline Lancaster, nor is the grantor referred to even as *her* husband, the affirmation being that she was examined separate and apart from the husband. *Every word of the certificate may be true and yet the person examined may not be the wife of the grantor.* We entertain no doubt that the mortgage was wholly void as a conveyance of the homestead because of the want of the certificate of the wife's acknowledge-

ment required by section 2034 of the Code. There being evidence, as we have seen, tending to show that the land in question was the homestead of the Lancasters at the time the mortgage was attempted to be executed, the circuit court erred in giving the affirmative charge for the plaintiff.

So far in the discussion of this case, we have assumed that the deed from Ezekiel Penny, the defendant, to the Lancasters was a valid conveyance. But, as has been stated, the defendant attacks the integrity and validity of that deed upon the ground that when it was signed and delivered by him the land constituted his homestead, that he was then (and is yet) a married man, and that his wife did not sign the instrument at all. The evidence offered by the defendant and received without objection proved the foregoing facts and established that the land was defendant's homestead, that he was a married man and that his wife did not sign the deed. On the part of the plaintiff this evidence was sought to be met and rebutted, and the case made by it overturned by proof of a decree in chancery, in a case in which Penny was complainant and the Lancasters and the mortgage company were respondents, which said decree, it is claimed for plaintiff here, adjudged and forever settled between said parties that the land was not Penny's homestead at the time he signed and delivered the deed to G. W. and Martha E. Lancaster; and the point now under consideration turns upon the effect of that decree—whether it was in fact and law thereby adjudged that Penny had no homestead in this land at the time in question. This bill was filed on October 2d, 1893, nearly two years after the dates of the alleged deed to the Lancasters and the mortgage to the plaintiff. Its purpose and prayer was to have the instruments purporting respectively to be a deed from complainant to the Lancasters and a mortgage from G. W. Lancaster to the British & American Mortgage Co. cancelled as clouds upon complainant's title on the grounds, *first,* that the former was void for want of the voluntary assent and signature of complainant's wife, the bill alleging that the premises constituted his homestead, etc., and, *second,* that complainant was overreached and de-

frauded by Lancaster to the execution of said deed. The answer of the mortgage company denied all the allegations of the bill, and set up an estoppel against Penny's asserted right to claim that the land was his homestead. The bill failed to aver that the complainant was in possession of the land at the time it was filed, nor were any facts averred or attempted to be averred upon which such a bill might be prosecuted though the complainant was out of possession. The bill was, therefore, without equity.—*Thorington v. City Council of Montgomery*, 82 Ala. 591; *Williams v. Lawrence*, 123 Ala. 538; *Belcher et al. v. Scruggs et al.*, 125 Ala. 336. But the subject matter of the suit, the removal of clouds from title, was within the general jurisdiction of the chancery court. There was no demurrer to the bill for the defect in question, no demurrer at all in fact, nor was there a motion to dismiss it for want of equity. To the contrary there was an answer, and a submission on the pleadings—the bill and answer—and proof for final decree on the merits. On this state of case the chancellor was not bound to dismiss the bill for want of equity because of its failure to aver complainant's possession of the land. The respondents had a right to waive this defect in averment. They did waive it by failing to object to the bill on account of it, and trying the case on its merits; and the court by this course of procedure acquired jurisdiction to determine the case on its merits. The rule in this connection is thus laid down in the Ency. of Pl. & Pr.: "If the subject matter of the litigation be outside of the pale of equity jurisdiction, the objection will not be waived by failure to take it at an early stage or in a particular manner; it is the duty of the court to recognize the fact and give effect to it trough not raised by the pleadings nor suggested by counsel. But in other cases, as where the matter falls under equitable jurisdiction subject to be defeated by something not appearing, or where the subject matter, though not within the ordinary jurisdiction of a court of equity, only wants some equitabe element to bring it within such jurisdiction, if the party submits to the jurisdiction he will not afterwards be heard to object."

Vol. 12, pp. 194-5. The Supreme Court of Illinois, adverting to the declaration in Story's Equity Pleading to the effect that it is fundamental that a bill must always state a case within the jurisdiction of a court of equity, and that a failure in this respect is fatal in every stage of the cause, and can never be cured by waiver or course of proceeding between the parties, draws the distinction we are discussing in the following language: "The author is here doubtless speaking of jurisdiction in the strict sense in which it is understood in courts of law, and as applicable to a certain class of cases in equity which under no circumstances are ever cognizable in a court of equity, such as would be a bill to recover damages for slander, or for an assault and battery. In these and like cases the decree would be a nullity, although the jurisdiction of the court passed unchallenged. But there is another class of cases involving matters of contract and the like, which while they do not come within the ordinary jurisdiction of a court of equity, (would it not be better to say: while they do not ordinarily come within the jurisdiction of a court of equity?) yet, inasmuch as these matters only want some equitable element to bring the case within such jurisdiction, the defendant by answer to the merits instead of demurring, will not be permitted to afterwards raise the question of jurisdiction, for the first time on the hearing, much less on appeal. In both classes of cases there is a want of jurisdiction. In the first there is a total want of power to hear or determine the case. In the other the want of power is not absolute but qualified."—*Richards v. Lake Shore Railroad Co.*, 124 Ill. 519. And it is "the general rule that in an equitable action the objection that there is an adequate remedy at law must be raised by the defendant in his pleading in order to be available to him as a defense." 18 Ency. Pl. & Pr., p. 111. And it is held by the Supreme Court of Missouri that "it is no barrier to a court of equity proceeding to grant relief in a cause, even if there be an adequate remedy at law, if the defendant does not plead a remedy at law, for in such case the court will go forward and afford relief in any cause of action, legal or equitable."—*Blair v. Railroad Co.*, 89

Mo. 388. The true doctrine in this connection is nowhere better stated than by Chief Justice BRICKELL, in *Tubb v. Fort*, 58 Ala. 277. That was a bill to recover rent. The bill disclosed that the complainant had an adequate remedy at law, but the point was first raised on appeal to this court. It was here held that the court of chancery in the absence of objection by demurrer or motion to dismiss might well proceed to a decree on the merits in such a case and that the question of jurisdiction could not be raised for the first time in this court. The learned Chief Justice said: "The general rule of practice in courts of equity has long been settled, that if the subject matter of the suit is not without the jurisdiction of a court of equity, and there may be circumstances under which it would be competent for the court to grant relief, the objection that there is an effectual and complete remedy at law, must be taken by demurrer and comes too late at the hearing [but such objection can be taken by motion to dismiss at any time before final decree] * * * If a defendant may, as it cannot be doubted he may, waive the objection that the subject matter of the suit, though lying, as the recovery of rent does, within the concurrent jurisdiction of a court of equity, is in the particular case without the jurisdiction of that court because the remedy at law is adequate, he must be deemed to have waived it, when, without objection, he answers, enters into active litigation on the merits, lures his adversary into security, withdraws his attention from the necessity of amendment, if an amendment can consistently with the facts be made, multiplies costs, protracts litigation, and on the hearing directs the attention of the court from the consideration of any other question, than whether the complainant has the right he asserts. Of course we refer to cases in which the subject matter of the suit lies within the jurisdiction of a court of equity, and the objection is that the remedy at law is adequate, and not to cases in which the subject matter does not fall within the jurisdiction."—And to like effect are the cases of *Andrews & Bro. v. McCoy*, 8 Ala. 920, and *Lockard v. Lockard*, 16 Ala. 423.

The foregoing authorities, and especially the case of *Tubb v. Fort*, determine the point under consideration

against the contention of appellant. That contention is that because the bill filed by Penny to remove clouds from his title failed to allege that he was in possession of the land at the time of bill filed, and showed, therefore, that he had an adequate remedy at law, the bill was not only without equity, but that even in the absence of all objection by the respondents to its sufficiency on account of that defect, the chancery court was without any jurisdiction or power to adjudge, on the averments and proof, that Penny had no homestead in the land; indeed, had only the power and jurisdiction to dismiss the bill of its own motion for want of equity, and whatever it did undertake to decree and in form decreed, the adjudication amounts to no more than a dismissal of the bill for want of jurisdiction resulting from the failure to aver possession, or at most that its decree was conclusive only that Penny was not in possession of he premises on October 2, 1893, when the bill was filed, and was in nowise decisive of his alleged homestead right at the time the deed was made to the Lancasters, November, 1891. To the contrary, upon the principles declared in the authorities quoted and cited the bill at the hearing stood before the chancery court so far as its powers of action upon it were concerned precisely as if it had alleged complainant's possession of the land, and upon it and the answer and the evidence it was open to the chancellor to determine the validity of the deeds and as incident thereto whether the lands constituted complainant's homestead upon the merits of the controversy. The decree which was rendered is a general one, broad enough to cover all the issues presented by the pleadings. It determines and adjudges that complainant is not entitled to the relief prayed, and dismisses the bill out of court. Preceding the decree in the record before us there is an opinion of the chancellor. In this he says the bill is without equity in that it fails to allege that complainant was in possession of the land when the suit was instituted; but he does not base his decree upon that, doubtless conscious that in the absence of objection to the bill on that ground he should not dismiss it for that defect. He

24s

[Gibson v. Clark, *et al.*]

further expresses the opinion that the evidence shows that complainant was not in possession at the time of bill filed; but he does not expressly base his decree upon that. He says that the question whether the land was complainant's homestead when the deed to the Lancasters was executed is left in doubt, but that he is inclined to think that the weight of the evidence on that point is against the complainant. And finally upon a rather full discussion of the evidence in that connection he concludes that Penny is estopped to claim against the mortgage company that the land was his homestead when he conveyed it to the Lancasters. Following this is the decree of the broad and general nature to which we have referred. In our opinion, it is conclusive upon Penny's claim that the land constituted his homestead, and this though the chancellor may have erred in his conclusion that Penny was estopped. *Tankersly v. Pettis,* 71 Ala. 179; *Strang v. Moog,* 72 Ala. 460.

The claim, therefore, which Penny set up in this action and adduced evidence tending to establish was shown to have been adjudged against him in the former suit and he can take nothing by it here. The court did not err in its rulings as to the competency of evidence in this connection nor in its refusal to give the affirmative charge for the defendant.

For the error committed in giving the affirmative charge for plaintiff, the judgment must be reversed. The cause is remanded.