(113 So. 35)

**GRAY et al. v. ALABAMA FUEL & IRON CO.**
(6 Div. 393.)

Supreme Court of Alabama.    Nov. 4, 1926.

Rehearing Denied June 18, 1927.

1. **Trespass ⟸20(2)—Constructive possession of land will support action for severance and conversion of timber as against persons not in adverse possession.**

Constructive possession of land, resulting from legal title, is sufficient to support action for conversion of timber thereon, where person severing and converting timber was not in adverse possession at time of severance.

2. **Adverse possession ⟸13—To exclude constructive possession, possession adverse thereto must be actual, in good faith, and under claim of right; "adverse possession."**

"Adverse possession," to exclude constructive possession of owner, must be actual possession, held in good faith under claim of right; a mere transitory possession for purpose of severing and removing timber being insufficient.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Adverse Possession.]

3. **Logs and logging ⟸35—One suing for conversion of timber severed from land in view of constructive possession held entitled to general affirmative charge.**

In action for conversion of timber severed from plaintiff's wild timber land, evidence, not showing disturbance of plaintiff's constructive possession, and only adverse occupation of defendant being of adjacent land without color of title, held to authorize general affirmative charge for plaintiff.

4. **Evidence ⟸353(2)—Deeds proving title of plaintiff having constructive possession of property held admissible in action for conversion of timber severed therefrom.**

In action for conversion of timber severed from plaintiff's land, admission in evidence of deeds showing plaintiff's title held not error, where constructive possession had not been disturbed.

5. **Quieting title ⟸43—Action to quiet title involves issues of peaceable possession and complainant's title.**

Action to quiet title involves issues of peaceable possession of complainant, and contingently on proof of such possession, nature and status of complainant's title.

6. **Judgment ⟸747(5)—Adverse decision in action to quiet title for failure to establish peaceable possession did not adjudicate actual title.**

Action to quiet title, decided against complainant on ground that she did not have peaceable possession, did not adjudicate actual title, but merely established defendant's title as superior to complainant's.

7. **Judgment ⟸747(5)—Decree in quieting title action held admissible in action for conversion of timber as adjudication of absence of adverse possession in person allegedly authorizing cutting.**

In action for conversion of timber from plaintiff's land, where defense was authorization by one having adverse possession, decree in plaintiff's favor in former action to quiet title, brought against plaintiff by such person claiming possession, held admissible as adjudication of absence of adverse possession at time of entry of former decree.

8. **Evidence ⟸67(1)—Absence of adverse possession, shown by quieting title decree, was presumed to continue, in absence of evidence to contrary.**

In action for conversion of timber, absence of adverse possession by person allegedly authorizing cutting shown by decree in action to quiet title would be presumed to continue, in absence of evidence to the contrary.

9. **Trespass ⟸52—Rule that unintentional trespasser cutting timber is liable only for value immediately after severance does not apply to willful trespass.**

Rule that unintentional trespasser severing and cutting timber, or his innocent vendee, is liable only for value of timber severed immediately after its severance, though timber has been made into logs, does not apply where trespass was willful.

10. **Trespass ⟸52—Severance of timber with knowledge of ownership constitutes "willful severance."**

"Willful severance" of timber, making trespasser liable for increase in value by improvement, constitutes severance with knowledge that timber is property of another than actor or person consenting to severance, and excludes idea of negligence.

---

⟸For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**11. Trespass ⬦⇒67—Willful trespass held for jury.**

Where defendants, under authority of one claiming to have adverse possession, severed timber from plaintiff's land, of which plaintiff had constructive possession, and made logs into lumber, whether knowledge of defendants that title to land was in dispute and failure to investigate title was an omission in bad faith, justifying a finding that trespass was willful, and in awarding damages for value of finished lumber, *held* for jury.

**12. Trespass ⬦⇒52—Defendants cutting timber were "willful trespassers," if they had means of knowing ownership of land.**

Defendants, cutting timber under authority of one claiming to have adverse possession, were chargeable with knowledge of plaintiff's title to land so as to make them "willful trespassers," if they had means of knowing title which they deliberately failed to investigate, such conduct amounting to bad faith.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Willful Trespasser.]

**13. Trespass ⬦⇒52—Persons guilty of willful trespass liable for value of lumber into which logs were made.**

If acts of defendants in severing timber, under authority of one whose claim to land was known to be doubtful, amounted to willful trespass, owner of land could, in conversion action, recover value of lumber into which logs were made.

Appeal from Circuit Court, Jefferson County; R. V. Evans, Judge.

Action by the Alabama Fuel & Iron Company against A. J. Gray and others, individually, and as partners under the firm name of the Jefferson Lumber Company, and L. L. Griffin. Judgment for plaintiff, and defendants appeal. Affirmed.

Statement by SOMERVILLE, J.:

The complaint is in thirteen counts. Counts 6 and 8 to 13, inclusive, were submitted to the jury.

Count 6 claims for the wrongful taking of 10,000 trees from the land of plaintiff; count 12, for the wrongful taking of goods and chattels, the property of plaintiff, viz. 10,000 trees; count 11, for the wrongful taking of 500,000 feet of lumber, the property of plaintiff; count 13, for the wrongful taking of 10,000 saw logs, the property of plaintiff; counts 8, 9, and 10, respectively, claim for the conversion of 10,000 trees, 10,000 saw logs, and 500,000 feet of lumber.

Defendant pleaded the general issue.

Plaintiff showed a regular paper title to the 180 acres of land from which the timber was cut from Thomas Easton, the original owner, through a sheriff's deed executed on May 7, 1860, based on a sale on execution on a judgment in the circuit court of Jefferson county against said Easton. Defendants showed a written contract dated June, 1922, under which the defendant Griffin was authorized by Mary F. Howard, as the alleged owner of the land, to cut and remove all the timber from 360 acres, known as the Easton lands, and including the 180 acres claimed by plaintiff; Griffin being the purchaser of the timber which was to be sawed up and sold to the defendants Gray and McKinley, under the name of the Jefferson Lumber Company. Plaintiff's evidence tended to show that 180,000 feet was cut under the contract by Griffin, and sawed into lumber, and sold and shipped to the Jefferson Lumber Company.

Defendants showed, by the testimony of Mary Howard, that she is a granddaughter of Thomas Easton, who originally owned this land; that he lived on it and died in 1866; that his widow lived on it until her death in 1871; that their only child, witness' mother, thereupon lived on and rented the land to various persons down to 1900; and that she died in 1904. The witness further testified:

"After my mother's death in 1904, I lived on the land about five different times, claiming them as owner. * * * My mother paid taxes there up until 1900. · I know that of my own knowledge. I remember the time when some timber was cut there in 1922. I gave Mr. Griffin permission to cut the timber. My brother and his son and myself were living on the land at the time. I was claiming to own the land. I had possession of it. * * * During the period 1909 to 1922 I did not live on the land continuously. I lived there two or three months at a time, and then I would go away again. * * * On the 18th day of March, 1921, my brother and I moved there, * * * and have been living there ever since. * * * I have lived on the land since 1869 and '70 up until 1908 or 1909."

She further testified:

"I did not tell Mr. Griffin that the Alabama Fuel & Iron Company owned that land. I told him I claimed it. I did not have a suit against them at that time. I didn't know until recently they had it or were claiming it. * * * I told Mr. Griffin that Mr. Powell was looking after it for me, and had it in court."

The defendant Griffin testified in part:

"I cut some timber off of what is known as the Easton tract. * * * Miss Mary Howard was living there at the time. * * * There was no one else living on there. Part of that land was in cultivation. * * * When I entered that land to cut the timber, I had never heard of any person claiming to own that land other than Miss Mary Howard."

Plaintiff offered, and the trial court received, in evidence the original and amended bill of complaint, the respondent's answer, and the final decree of the court, in a chancery cause filed on March 21, 1919, in the circuit court of Jefferson county, wherein Mary Howard (above referred to) was com-

plainant and Alabama Fuel & Iron Company (plaintiff herein) was respondent. The bill alleged that the complainant was "the owner of and in the peaceable possession of" the 360 acres of land referred to above as the Easton tract, and contained the statutory allegations and prayer prescribed for a bill to quiet title.

The respondent answered, denying the complainant's ownership, and also her peaceable possession of the land, and setting up a claim of title from the government, through Thomas Easton, and down to itself. The respondent also claimed title by more than 10 years of peaceable, uninterrupted, actual adverse possession.

The final decree of the court in said cause was as follows:

"This cause is submitted upon the original bill as amended, the answer of respondent and testimony as noted by the register.

"In order to maintain a bill to quiet title, it must be alleged and proven that the complainant was, at the time of the filing of the bill, in peaceable, undisputed possession of the land as distinguished from the contested, disputed, or scrambling possession [citing authorities].

"The evidence in this case fails to show that the complainant, Mary Howard, was, at the time of the filing of this bill, in the actual possession of the property in dispute, and, furthermore, no such state of facts is shown which would authorize the court to say that the complainant had the constructive possession of such property. There is practically no dispute as to the facts in the case upon which complainant relies as establishing possession, both actual and constructive. It does not appear that the complainant had such possession as would entitle her to maintain this bill, and the court is therefore of the opinion that the complainant is not entitled to the relief prayed for.

"It is therefore ordered, adjudged, and decreed by the court that the complainant's bill be dismissed, and that said complainant, Mary Howard, be taxed with the costs of this proceeding, for which let execution issue."

Defendants objected to the introduction of said papers on numerous grounds, among others, that "the final decree therein does not attempt to adjudicate the rights of the said Mary Howard, and that the said decree adjudicates nothing, except that at the time of the said bill the said Mary Howard was not in the peaceable undisturbed possession of the said land, as a prerequisite to her filing such a bill," and "for that the decree in said cause did not add to, define, or qualify the rights of the said Alabama Fuel & Iron Company, the defendant therein." The trial court overruled said objection, and also defendant's motion to exclude each of the papers, severally, on the same grounds.

The trial judge thereupon, on request, gave for plaintiff the general affirmative charge, with instructions as to the measure of damages; and there were verdict and judgment for $3,810.60, from which defendants appeal.

Jos. P. Mudd and Edw. T. Rice, both of Birmingham, for appellants.

A conveyance of land adversely held at the time is void as to him adversely holding or as to those in privity with him. Curtis v. Riddle, 177 Ala. 128, 59 So. 47; Burnett v. Roman, 192 Ala. 188, 68 So. 353; First Nat. Bank v. Johnson, 190 Ala. 566, 67 So. 234; Gerald v. Hayes, 205 Ala. 105, 87 So. 351. An owner of a freehold cannot maintain trover, trespass, or detinue for chattels severed from the freehold, if the land was adversely held at the time of the severance. Pearce v. Aldrich Min. Co., 184 Ala. 610, 64 So. 321; Id., 192 Ala. 195, 68 So. 900; Cooper v. Watson, 73 Ala. 252; Watters v. Ezell, 188 Ala. 385, 66 So. 443; Brothers v. Norris, 209 Ala. 426, 96 So. 328; Sadler v. A. G. S., 204 Ala. 155, 85 So. 380. A dismissal by the trial court of Mary Howard's bill against this complainant for lack of peaceable possession in her did not adjudicate the plaintiff's title to the lands. Sadler v. A. G. S., supra; Steelman v. Blackman, 72 N. J. Eq. 330, 65 A. 715; Elledge v. Funke, 203 Ala. 322, 83 So. 33; Waddle v. Ishe, 12 Ala. 308; State v. Crane Co., 18 Ala. App. 194, 89 So. 901; 23 Cyc. 1150; Buchmann Ab. & Inv. Co. v. Roberts, 213 Ala. 520, 105 So. 675; Manning v. Manning, 203 Ala. 186, 82 So. 436; Vaughan v. Palmore, 176 Ala. 72, 57 So. 488; Ocean View L. Co. v. Loudenslager, 78 N. J. Eq. 571, 80 A. 471; McDermond v. Hamby, 205 Ala. 522, 88 So. 848; Stacey v. Jones, 180 Ala. 231, 60 So. 823; McNamara v. Home L. & C. Co. (C. C. A.) 121 F. 797. Mary Howard had the right to give possession to defendants to cut timber, having acquired title to the land by adverse possession and prescription. Jones v. Rutledge, 202 Ala. 213, 80 So. 35; Miller v. Vizzard Inv. Co., 195 Ala. 467, 70 So. 639. The verdict was excessive. 26 R. C. L. 1140.

Percy, Benners & Burr, of Birmingham, for appellee.

The decree of a court of chancery, dismissing a bill absolutely and unconditionally, on a hearing on pleadings and evidence, is an adjudication of the merits of the controversy, forming a bar to any litigation of the same matters between the parties or their privies. Warrior River Coal & L. Co. v. Ala. State Land Co., 154 Ala. 135, 45 So. 53; Tankersly v. Pettis, 71 Ala. 179; Strang v. Moog, 72 Ala. 460; Penny v. Mortgage Co., 132 Ala. 357, 31 So. 96; Freeman on Judgments (4th Ed.) § 270; 34 C. J. 788. The measure of damages for the willful cutting of timber on the land of another, even against an innocent vendee, is the reasonable market value of the lumber manufactured from said timber, when the same has been manufactured by the willful trespasser into lumber before being sold to said vendee. Birmingham Mineral R. Co. v. T. C. I. & R. Co., 127 Ala. 140, 28 So. 679; Yellow Pine Lbr. Co. v. Ala. State Land Co.,

171 Ala. 80, 54 So. 608; White v. Yawkey, 108 Ala. 270, 19 So. 360, 32 L. R. A. 199, 54 Am. St. Rep. 159.

SOMERVILLE, J. The several counts of the complaint are in trespass de bonis and trover for the taking or conversion of trees, saw logs, or lumber, as the property is variously described.

[1] The principles applicable to a case like this were correctly stated in Cooper v. Watson, 73 Ala. 252, 255, as follows:

"The doctrine seems well settled, upon principle and authority, that if the owner of the land be not in the actual possession—if he can show title to things severed from it, only by showing title to the land, a personal action for the taking, conversion, or detention of such things will not lie. If he have the possession at the time of the severance, the rule is different. But if his possession is divested—if his right lie in entry, and the adverse possessor gathers a crop in the course of husbandry, or severs a tree or other thing from the land, the things severed are converted into chattels. But they do not become the property of the owner of the land; he is out of possession, and has no right to the immediate possession of such things, nor can he bring any action to recover them, until he regains possession."

These principles are restated and fully discussed in Stewart v. Tucker, 106 Ala. 319, 17 So. 385; Aldrich Mining Co. v. Pearce, 169 Ala. 161, 52 So. 911, Ann. Cas. 1912B, 288; and Williams v. Lyon, 181 Ala. 531, 61 So. 299; Sadler v. A. G. S. R. R. Co., 204 Ala. 155, 85 So. 380. Those cases, as also Cooper v. Watson, supra, recognize the principle that a constructive possession of the land, resulting from the plaintiff's legal title thereto, is sufficient to support these personal actions. This assumes that the defendant, or the person under whose authority the property has been severed and converted, was not in the adverse possession of the land at the time of the severance. Stewart v. Tucker, 106 Ala. 319, 322, 17 So. 385; Sadler v. A. G. S. R. R. Co., 204 Ala. 155, 85 So. 380.

[2] The adverse possession which will exclude the owner's constructive possession must be an actual possession, held in good faith under claim of right. A merely transitory possession—an entry and holding merely for the purpose of severing and removing the timber or other growing things—will not suffice. Aldrich Mining Co. v. Pearce, 169 Ala. 161, 168, 52 So. 911, Ann. Cas. 1912B, 288. "Yet if the owner has notice that the trespasser is upon the premises, exercising acts of ownership, such as cultivating the land or severing and removing the timber, and acquiesces therein, or if upon notice by the owner to the intruder to desist, the demand is refused and he remains upon the premises, and continues to exercise acts of dominion and ownership, such possession becomes actual and adverse to that of the owner. The owner's possession becomes divest-

ed, and his right is in entry only." Stewart v. Tucker, 106 Ala. 319, 322, 17 So. 385, 386.

[3] Notwithstanding the testimony of Mary Howard that her ancestors and herself were in possession of the Easton land from the date of Thomas Easton's death in 1866 on down to the present time, and that they successively lived on it and cultivated it—those were mere general conclusions which were effectively nullified, so far as plaintiff's portion of the land is concerned, by her specific statements showing that those acts occurred in section 23, and that plaintiff's land was wild land (lying in sections 13 and 24), upon which there had never been any habitation, or cultivation, or occupancy of any kind.

So, also, though the defendant Griffin testified that he had been over the Easton tract of land prior to cutting it, and that Mary Howard was living on it and part of it was in cultivation, it is conclusively apparent that he did not refer to plaintiff's tract, for he testified that "the part of that land where I put my sawmill (in section 24) was all timber and wild, and there was no fence and no sign of habitation on that part."

There was, therefore, no conflict in the evidence, which showed that plaintiff's constructive possession of its land in sections 13 and 24 was never disturbed by any actual adverse possession. Mary Howard and her ancestors, who held intermittent possession of a part of the Easton lands not claimed by plaintiff, had no color of title which could serve to extend that possession to other parts not thus actually occupied, and hence that principle cannot serve the defendants here.

Our conclusion is that the general affirmative charge was properly given for plaintiff.

[4] Defendants complain that the trial court erred in receiving the several deeds exhibited by plaintiff as muniments of title—this for the reason, as alleged, that the land conveyed was, at the time of each conveyance, in the adverse possession of Mary Howard, or of one of her ancestors. This contention is, of course, invalidated by the conclusion above stated.

Another contention is that the trial court committed reversible error in receiving in evidence the pleadings and decree of the court in the equity case of Mary Howard v. Alabama Fuel & Iron Company, the substance of which is shown in the reporter's statement above.

[5, 6] We agree with counsel for appellant in the view that the decree in that case adjudicated nothing but the single fact that Mary Howard did not have the peaceable possession, actual or constructive, of the lands in controversy, at the time of the filing of her bill of complaint. The "merits" of the case involved two main issues: (1) The peaceable possession by the complainant; and (2) contingently upon proof of such possession, the nature and status of the respondent's title. Whittaker v. Van Hoose,

157 Ala. 286, 47 So. 741; Vaughan v. Palmore. 176 Ala. 72, 57 So. 488; Stacey v. Jones, 180 Ala. 231, 60 So. 823. The trial court explicitly adjudicated the first proposition against the complainant, and denied relief upon that ground. There was no occasion for, nor any propriety in, an adjudication of the respondent's title (Buchmann A. & I. Co. v. Roberts, 213 Ala. 520, 105 So. 675), and none was made; and the title of the complainant was not adjudicated either directly or by implication from the establishment of a superior title in the respondent. So far as actual title was concerned, it was res non judicata. Chamberlain v. Gaillard, 26 Ala. 504, 511; Gilbreath v. Jones, 72 Ala. 368; New v. Driver, 180 Ala. 176, 60 So. 798; Taylor v. Wilson, 183 Ky. 695, 210 S. W. 670; Hudson v. Iguano, etc., Co., 71 W. Va. 402, 76 S. E. 797; 2 Freeman on Judgments (5th Ed.) 1860; 34 Corp. Jur. 957, § 1360; Id., 964, § 1375.

The cases relied upon by plaintiff as supporting a contrary view are not opposed. The case of Warrior River, etc., Co. v. Ala. State Land Co., 154 Ala. 135, 45 So. 53, is based upon a construction of rule 28, chancery practice, holding that the dismissal of a bill to quiet title under the statute, after it had been set down for hearing, because of the complainant's default, operating as a dismissal on the merits, was an adjudication of the title in favor of the respondent. The decision in that case was therefore responsive to the mandate of the rule, the conditions being entirely appropriate, and its authority is invalid here. So, also, the case of Penny v. B. & A. Mortgage Co., 132 Ala. 357, 31 So. 96, is readily distinguishable. In that case (a bill to remove cloud from title) the bill was wanting in equity for want of an allegation of possession in the complainant, but the respondents waived the defect by not objecting to the bill. "On this state of the case," said the court, "the chancellor was not bound to dismiss the bill for want of equity because of its failure to aver complainant's possession of the land. The respondents had a right to waive this defect in averment. They did waive it by failing to object to the bill on account of it and trying the case on its merits; and the court by this course of procedure acquired jurisdiction to determine the case on its merits." The opinion then proceeds to show that the decree denying relief and dismissing the bill was not based upon the failure of the complainant to allege and prove possession, but rather upon a finding of fact on the merits of the title involved, as well as on an estoppel against the complainant.

[7, 8] But, though the decree here in question was not an adjudication of the title, it was undoubtedly admissible in evidence as an adjudication of the complainant's want of possession at the date of the filing of the bill (March 21, 1919), a status which would be presumed to continue without interruption in the absence of evidence to the contrary, and which presented a highly material issue in the case. No doubt that was the theory upon which the decree and pleadings were admitted in evidence by the trial court. Manifestly, however, as we have above pointed out, with or without that decree in evidence, plaintiff was entitled to the general affirmative charge.

Defendants complain that the verdict of the jury was excessive, in that the damages were assessed on the basis of the value of the finished lumber instead of the value of the saw logs into which the trees were first converted when severed from the land.

[9] In actions like this the rule is well settled that an unintentional trespasser, or his innocent vendee, is liable only for the value of the thing severed immediately after its severance, when it has become a chattel. White v. Yawkey, 108 Ala. 270, 19 So. 360, 54 Am. St. Rep. 159; Birmingham Min. R. R. Co. v. Tenn., etc., Co., 127 Ala. 137, 147, 28 So. 679; Ivy C. & C. Co. v. Ala. C. & C. Co., 135 Ala. 579, 33 So. 547, 93 Am. St. Rep. 46; Zimmerman v. Dunn, 151 Ala. 435, 44 So. 533.

This, however, "is an exception to the general rule and does not apply when the severance was willful, nor does it appear that there is sufficient reason or necessity for extending it in favor of the willful trespasser's vendee though he be guiltless of intentional wrong." Birmingham Min. R. R. Co. v. Tenn., etc., Co., supra; 17 R. C. L. 1112, § 38.

[10] A "willful" severance of timber, in this connection, means not merely an intentional severance, but such a severance with knowledge that the timber is the property of another, whose rights therein are being thereby violated. Such a state of mind imports the absence of an honest belief that the land belongs to the actor, or to a third party who has consented to the severance, and is the antithesis of inadvertence or mistake. Glenn v. Adams, 129 Ala. 189, 29 So. 836; Postal Tel. Co. v. Lenoir, 107 Ala. 640, 18 So. 266. As said in Birmingham Ry. & El. Co. v. Bowers, 110 Ala. 328, 20 So. 345, "to constitute a willful injury, there must be design, purpose, intent to do wrong and inflict the injury." Willfulness therefore excludes the idea of negligence, as negligence excludes the idea of willfulness. Parker v. Penn. Co., 134 Ind. 673, 679, 34 N. E. 504, 506, 23 L. R. A. 552. It here imports much more than a mere knowledge of facts which if investigated with due diligence, would have led to knowledge of the title and rights of the plaintiff, and the injury he was doing to those rights.

[11] The undisputed evidence showed that the trees severed were of the value of $4 per thousand feet immediately after their severance and conversion into saw logs, and that they were of the value of $16.50 to $19.50 per

thousand feet after their conversion into lumber by defendant Griffin at his sawmill on the land. It was also without dispute that Griffin cut 180,000 feet of timber from plaintiff's land, and sold and delivered the lumber sawed therefrom to his codefendants.

The amount of the verdict and judgment shows unmistakably that the jury awarded damages on the basis of the value of the finished lumber manufactured by Griffin from the logs—$3,810.60. To sustain such a verdict, the jury must needs have found that the defendant Griffin cut and converted the timber with knowledge or notice that it was the property of plaintiff, or without an honest belief that it was the property of his vendor, Mary Howard.

The only evidence pertinent to that inquiry is found in the statement of Mary Howard that she told Griffin—presumably when she sold him the timber—that "Mr. Powell (her lawyer) was looking after it (the land) for me, and had it in court," and in the statement of Griffin that he did not examine the tax or deed records, and made no investigation of the title, before cutting the timber under his contract of purchase.

Defendants insist very earnestly that this evidence did not justify an inference by the jury that Griffin was a willful wrongdoer, and that their requested instructions limiting plaintiff's recovery to the value of the saw logs—$4 per M feet—should have been given.

[12] The issue was, essentially, one of good faith, vel non, on the part of Griffin, to be tested by substantially the same rules that apply to a purchaser of negotiable paper, which have been thus authoritatively stated:

"Every one must conduct himself honestly in respect to the antecedent parties, when he takes negotiable paper, in order to acquire a title which will shield him against prior equities. While he is not obliged to make inquiries, he must not willfully shut his eyes to the means of knowledge which he knows are at hand, * * * for the reason that such conduct, whether equivalent to notice or not, would be plenary evidence of bad faith." Goodman v. Simonds, 20 How. 343, 366 (15 L. Ed. 934); 8 Corp. Jur. 505, § 711.

And:

"One who suspects, or ought to suspect, is bound to inquire, and the law presumes that he knows whatever proper inquiry would disclose." Ward v. City Trust Co., 192 N. Y. 61, 72, 84 N. E. 585, 589.

This court has said that, where a purchaser had notice of an outstanding, conflicting claim, he is not warranted in relying upon explanations or contradictions made by one (his vendor) whose interest it was to misrepresent or conceal the facts. Carter v. Lehman, Durr & Co., 90 Ala. 126, 128, 7 So. 735.

[13] With knowledge of the fact that his vendor, Mary Howard, had put the land in the hands of a lawyer, who had it in court, we cannot escape the conclusion that it was a question of fact for the jury to determine whether Griffin's failure to make any further inquiry as to the ownership of the land was an omission in bad faith—a willful shutting of his eyes to the existence of a hostile and, perchance, meritorious and superior claim. If the jury so determined, they were authorized to find that the trespass and conversion were willful, and so to award damages covering the enhanced value of the logs.

Finding no error in the record, the judgment will be affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.