188 So. 256

**ALLENDALE LAND CO. v. ALABAMA BY-PRODUCTS CORPORATION.**

**6 Div. 311.**

Supreme Court of Alabama.

April 20, 1939.

Richard Hail Brown and Aird & Fox, all of Birmingham, for appellant.

Cabaniss & Johnston and Gerry Cabaniss, all of Birmingham, for appellee.

BOULDIN, Justice.

Action to recover sums claimed to be due as minimum royalties under a mining lease.

By the terms of the lease the lessor granted to the lessee the right to mine all the Big Seam of coal in and under an 80-acre tract of land in Walker County.

The term of the lease was ten years and seven months from the date of the lease, June 1, 1929.

The lessee undertook to mine all the workable coal in said seam. Royalties at the rate of ten cents per ton were payable monthly for the coal mined from month to month. A minimum royalty of $4800 per year was stipulated.

In the event the monthly royalties for the calendar year did not aggregate $4800, the shortage became then due and payable.

In this suit the lessor claims unpaid minimum royalties of $2813.20 for the calendar year 1934, and $2929.20 for the year 1935. Without dispute the mine was operated during these years, and minimum royalties have not been paid covering such period.

The defense is that under other stipulations in the lease, and subsequent negotiations and proceedings in course of operations no minimum royalties accrued and became payable for the year 1934, or 1935.

The payment of minimum royalties was "subject to the qualifications set out in Section Six hereof."

The pertinent provision of Section Six reads: "The Lessee shall have the right, at its option, at any time during the term of this. contract, to pay the Lessor for the recoverable coal remaining in said land at the rate of ten cents per ton of two thousand pounds, *and after such payment*, no minimum royalties then unaccrued shall be paid." (Italics supplied.)

The lease contained the following arbitration clause: "In case any disagreement or difference as to matters of fact shall arise between the parties hereto or any person claiming under them in relation to this agreement or arising thereout, such disagreement or difference shall be referred to three arbitrators, who shall be reputable coal mining engineers, one to be

appointed by each party and the third to be appointed by the two so by the parties appointed; and the award in writing signed by any two of them shall be final."

The lessor invoked this provision of the lease naming Milton H. Fies as arbitrator. The lessee named D. E. Morrow, and these two named W. F. Cobb. These three mining engineers undertook to arbitrate the matters submitted to them. They differed as to whether the question of minimum royalties was submitted. Thereupon they rendered a unanimous award on two matters, viz.:

They found the lessee indebted to the lessor in the sum of $4649.22 for royalties on coal mined and unreported from time to time and $4835.40, the royalties on recoverable coal remaining in the lands. These sums were promptly paid.

Messrs. Morrow and Cobb made a supplemental award holding the question of minimum royalties was within the submission, and that, for reasons set out in their award, no minimum royalties accrued.

■ The controlling question on this appeal is whether the matter of minimum royalties was within the submission. The submission to arbitrators was through correspondence as follows: A letter from lessor to lessee of date January 28, 1935, rendering a statement and requesting payment of the minimum royalty claimed to be due for the year 1934; letter from lessee to lessor in reply of date February 6, 1935; letter from lessor to lessee in reply of date February 11, 1935; letter from lessee to lessor in reply of date March 12, 1935.

A study of this correspondence, which appears in the report of the case, leads us to the conclusion that all royalties in question were submitted. These were of three classes specified in letter of February 11th, to wit: 1st, the minimum royalty claimed to be "now due;" 2nd, royalties for coal theretofore mined and not reported, designated as "past due;" 3rd, royalties on unmined coal payable as per the option in Section 6 of the lease.

The disagreement developing upon a demand for the minimum royalty was the occasion for a resort to arbitration.

Other features of the record disclose that since May, 1934, negotiations had been pending looking to the ascertainment of the quantity of unmined coal, with a view to making payment under Section 6, and avoiding the accrual of minimum royalties. In this connection the letter from lessee to lessor of date May 18, 1934, is pertinent.

In the award there appears the following finding of facts from the evidence, and their conclusion thereon:

"The undersigned find, from the evidence submitted to them, that on May 14th, 1934, the Alabama By-Products Corporation notified the Allendale Land Company that it desired to avail itself of its right under Section Six of the lease agreement to pay for the remaining workable coal in said land and estimated the remaining workable coal as being 15,000 tons; and that the Allendale Land Company has not disputed the claim of the Alabama By-Products Corporation that such notice was given but did dispute the amount of recoverable coal remaining in said land.

"We find that thereafter the Allendale Land Company, on June 30th, 1934, wrote to the Alabama By-Products Corporation, raising other questions not involved in this report and stating that they were agreeable to a conference 'with a view of reaching an agreement on the total tonnage recoverable under the lease, and arriving at a settlement for the recoverable tonnage on the basis of present day value, thereby permitting you to mine the coal at your convenience, instead of at the rate stipulated in the lease,' and that thereafter there was an exchange of correspondence between the Allendale Land Company and the Alabama By-Products Corporation, but that the Allendale Land Company did not, until after the matter was submitted to the arbitrators, make a statement to the Alabama By-Products Corporation as to the amount of recoverable coal which they claimed to be in said land.

"It is the opinion of the undersigned that, under the terms of the lease agreement and especially those parts quoted herein, it was the intention of the parties thereto to give the lessee the right at any time to pay for the balance of the recoverable coal remaining in said land and thereafter avoid the payment of any further minimum royalty; and that the Alabama By-Products Corporation sought to avail itself of this provision by so stating and by reporting to the Allendale Land Company its estimate of the remaining recoverable tonnage.

"We further find that the Allendale Company did not, until after this matter had been submitted to arbitration, make

any statement to the Alabama By-Products Corporation as to the amount of recoverable coal which it claimed remained in said land; and that the matter was not submitted to arbitration until about February, 1935, approximately nine months having elapsed since the Alabama By-Products Corporation stated that it wanted to avail itself of the right to pay for the remaining recoverable coal.

"The undersigned find that the Allendale Land Company failed to make an effort to agree within a reasonable time upon the amount of recoverable coal remaining in said land to be paid for by the Alabama By-Products Corporation, and that under the terms of the lease they were not entitled to the payment of any minimum royalty."

Appellant argues that under the option in Section Six minimum royalties, by express terms, were to run until payment was actually made for the unmined coal; and, therefore, the award discloses a clear mistake of law on the part of the arbitrators, and should not stand.

True, the primary purpose of minimum royalties is to assure the lessor a stated income from the lease, and, if the lessee does not speed up operations, he stands to pay royalties for more coal than is in the lands. Bruce Coal Co. et al. v. Bibby, 201 Ala. 121, 77 So. 545.

But the minimum royalty provision and the option under Section Six are directly related. When mining operations have progressed to a point where the lessee finds it impractical to mine coal in such amount that regular royalties will equal minimum royalties, the latter provision becomes oppressive, assumes the character of a penalty. The option to avoid this result should be construed reasonably in the light of mining experience. The amount payable is a question of fact to be ascertained; may be the subject of negotiation, and finally, of arbitration, if need be. Under the finding of facts we are not convinced the conclusion of the arbitrators was inequitable nor unlawful. Manifestly, the submission of the question of the amount due by way of royalties in course of mining operations under a mining lease is not an arbitration concerning the title to land requiring a submission in such form as may pass title to lands.

We find no error in the judgment of the trial court sustaining the award.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.